NEW-YORK,
May, 1830.

Goodwin
v.
Holbrook.

GOODWIN *vs.* HOLBROOK.

The *place of payment* of a note payable in *salt* or other portable article, is the residence of the creditor, where the *time* of payment is fixed by the contract, but the place not designated.

Covenants are *independent* where there is a covenant to convey by a day certain on the one part, and such day precedes the time of payment the consideration of the act to be performed stipulated in the convenant on the other side ; and in such case, in an action by the party covenanting, it is not necessary to aver performance on his part.

Where, in a contract for the payment of a sum of money in *salt*, the party contracting to make the payment agreed to pack the salt in barrels in the usual way of packing salt, and the contract specified that the barrels were to be furnished and delivered at the place of manufacture by the party to whom the payment was to be made ; *it was held*, that to entitle a party to sustain his action for the non-delivery of the salt, he was bound to aver that he had *furnished* the barrels, or had *waived* the per formance of that part of the contract by which the manufacturer was bound to pack the salt in barrels.

DEMURRER to declaration. On the 20th March, 1816, *at Aurelius*, an agreement under seal was entered into between H. Goodwin, of Aurelius in Cayuga county, and J. Matthews, of Salina in Onondaga county, whereby Goodwin agreed to sell and convey unto Matthews all his right, interest and claim in and to certain salt works, described as salt lot No. 9 ; and Matthews agreed to pay for the same $1000 in first quality Onondaga salt ; $200 to be paid on the 1st October, 1816, $400 on the 1st October, 1817, and the residue in one year thereafter, with interest from the 1st October, 1816. He further agreed to pack all the salt in barrels in the usual way of packing salt, the barrels to be furnished by Goodwin and delivered at the salt works. It was fur-

ther stipulated that Matthews should take possession within three days from the date of the agreement, and that the writings should be executed within sixty days; there was also a stipulation in relation to the then occupants of the lot. On the 27th June, 1816, the time for completing the writings was extended, by an endorsement on the agreement signed by Goodwin and Matthews, to the 1st October, 1816. On the 8th April, 1818, Matthews assigned all his title to the salt works agreed to be conveyed by Goodwin to the defenant Holbrook, in consideration whereof Holbrook, by an instrument under seal, bearing date at *Salina* on the same day agreed to make to Goodwin the payments then due, and which should thereafter become due on the contract between Goodwin and Matthews. In February term, 1829, Goodwin commenced a suit against Holbrook, and declared against him in *covenant*. The declaration set forth that on, &c. an article of agreement was entered into by and between Goodwin and Matthews whereby Matthews agreed to pay to Goodwin $1000 in first quality Onondaga salt, specifying the proportions and times of payment, as contained in the agreement; that on, &c. Matthews assigned the agreement to Holbrook, in consideration whereof Holbrook covenanted and agreed to pay all such sums of money as were then due and owing by Mathews to Goodwin upon the said agreement thus assigned, and all such sums as should become due thereon. Then follows an averment that at the time of the assignment of the agreement, there was due to Goodwin on the agreement $500, payable in salt, after which follows the *breach*. The defendant prayed *oyer* of the instruments declared on, which being read, he put in a general *demurrer* to the declaration.

*J. A. Spencer*, for defendant. The delivery of the barrels was a condition precedent to the delivery of the salt, and should have been averred. (Chipman on Contracts, 25. Selwyn's N. P. 441. Willes, 496.) So also the execution of the writtings within the time agreed on ought to have been averred. (10 Johns. R. 203. 5. 2 Selwyn's N. P. 444. 3 T. R. 366. 1 East, 619.)

*C. P. Kirkland,* for plaintiff. The covenants of the parties were independent of each other. The execution of the writings need not therefore be averred ; nor was it necessary to shew that the defendant had been furnished with barrels. Had the plaintiff claimed damages for a breach of this part of the agreement, such averment would have been necessary; but such claim is not made. The plaintiff had a right to waive this part of the contract, it being wholly for his benefit. (Chipman on Contracts, 24, 5. 4 Cowen, 452. 5 id. 516.)

*By the Court,* MARCY, J. It is said that the execution of the writings relative to the salt lot was a condition precedent to the payments to be made by the defendant, and that the declaration is defective in not averring that this was done. It is very evident, from an inspection of the agreement, that the covenant for the conveyance by the plaintiff is independent of the covenant on the part of the defendant. By the first agreement, the conveyance was to be made at a time prior to that on which the consideration, or any part of it, was to be paid ; and, though it was extended afterwards to a time when a portion of the consideration became payable, there is nothing to shew that the payment was to depend on the execution of the writings. There would have been more reason for inferring such an intent in the parties if the payment of the whole consideration and the execution of the writings had been simultaneous acts.

The plaintiff, to whom the payment was to be made, lived at Aurelius, where the covenants were entered into, and Matthews, to whose rights and liabilities the defendant has succeeded lived at Salina, where the premises contracted for were situated, and where the article which was to be taken as payment was manufactured.

It will be observed that the contract is to pay one thousand dollars in salt. If the payment had been to be made in money, there could have been no doubt as to the place of performance ; it would have been the duty of the defendant to seek the plaintiff in order to make the payment. Is the place of performing the contract changed by substituting

NEW-YORK,
May, 1830.

Goodwin
v.
Holbrook.

a commodity for money? The implied place of performance is sometimes changed by the nature of the article to be delivered. If a merchant or manufacturer engages to pay *on demand* in the articles of his trade, and no place is specified in the contract, the store of the merchant or the workshop or place of the deposit of the fabrics of the manufacturer is the place where payment must be demanded before an action accrues for the non-performance of the contract. (Chip. on Cont. 28, 9.) It is said by the same author, "that if a note of hand be given for cattle, grain or other portable articles, and no place of payment be designated in the note, the creditor's place of residence is the place of payment." (id. 25.) These two positions may seem to be contradictory; but one or two considerations cannot fail to shew that they are not so. The peculiar circumstances and course of business of the promissors in the first case warrant the inference that the parties intended that the articles should be delivered at the promissor's usual place of making and delivering of the articles sold by them. The engagement is that the articles shall be delivered *on demand.* This seems to imply that the creditor must go to the debtor to make the demand, before the latter can be in default. But the last proposition supposes the place omitted, but the time for delivery fixed. It presents a case like the one under consideration, and contains the rule of law that ought to be applied to it. Salt is as much a portable article as grain, and the time for the delivery of it in this case being specified in the contract, the defendant's engagement must be construed to be for its delivery to the plaintiff at his residence in Aurelius, unless a different construction is authorised by the clause relative to packing the salt in barrels to be delivered by the plaintiff at the salt works in Salina. This clause does not, in my opinion, weaken—it rather strengthens the legal inference that Aurelius was the place of delivery. If the barrels were to be furnished at the place where the salt was to be delivered, why was it deemed necessary to specify that place? The salt was to be packed at the place of manufacture; this act necessarily was to precede the delivery, but it could not be done till the plaintiff had furnished the barrels. There was something then to be

done by the plaintiff before the delivery, and the defendant is not in default for not making delivery as long as this act remains unperformed by the plaintiff; it does not appear by the pleadings that it was ever performed by him.

But it is said that what relates to packing and furnishing the barrels is a distinct agreement, solely for the benefit of the plaintiff, and that he was at liberty to dispense with its performance. I view it as a part of the contract, and I do not know that it would not be less expensive to the defendant to pack the salt in barrels, and deliver it in them, than to deliver it in bulk; if it would be less expensive, that part of the agreement was beneficial to the defendant, and without his consent, the plaintiff could not dispense with it. But whether this be so or not is in no wise material; for if the plaintiff could have dispensed with it, the record does not shew that he did so; and I hold the defendant excused for waiting until the plaintiff performed the act which necessarily preceded the delivery, or distinctly waived the part of the agreement relative to that act.

Judgment on demurrer for defendant, with leave for plaintiff to amend.