# GRAFTON,

## JULY TERM, A. D. 1856.

---

## PUTNAM *v.* MELLEN.

Where there are several covenants, promises or agreements, which are independent of each other, one party may bring an action for a breach without averring or proving performance on his part, and it is no excuse for the defendant to allege in his plea a breach on the part of the plaintiff. *Aliter*, if the covenants, promises or agreements are dependent.

Where agreements or covenants are independent as to one party, they are so as to the other; so that if any act is to be done, service rendered, or article delivered by a specified day, and the payment therefor is not to be made till a subsequent day, an action may be maintained for a breach of the agreement, before the payment falls due.

On the 27th of December Putnam and Mellen agreed to exchange oxen on the next morning at one W's, and P. was to pay M. seventeen dollars as boot, on the 15th of January following. P's cattle were ready at W's on the 28th of December till eight o'clock in the forenoon, and were then absent two or three hours, when they were driven back. While absent, M. came with his oxen, to exchange, and remained till P's came back, and the parties met within twenty-five or thirty rods of W's house, but the exchange was not made.—*Held*, that the agreements to make the exchange and to pay the money at a future day, were independent undertakings, and that an action could be maintained for a refusal to make the exchange on the 28th, without showing a payment of the seventeen dollars.—*Held*, also, that P. was not bound to give security for the seventeen dollars, before the exchange took place; and *held*, further, that there was a substantial performance by P. on the 28th, of his part of the contract to be performed on that day.

ASSUMPSIT, on a verbal agreement for an exchange of cattle, with a count for money had and received. Plea, the general issue.

---
Putnam *v*. Mellen.
---

The evidence offered by the plaintiff was as follows :

*Selden Willey's* testimony. The plaintiff and defendant were at my house on the 27th of December, and talked of exchanging cattle. The defendant said he would exchange for twenty dollars. The plaintiff said he would not give it, but would give fifteen. The defendant said he would not trade, and they did not. They went away, and Putnam came back in a few minutes and followed after the defendant, and was gone half an hour, and came back and said they had traded, and he was to give Mellen twenty dollars to boot, and had paid him three dollars to bind the bargain, and Mellen would send his cattle down the next morning. Putnam told me to deliver his cattle to Mellen when he came for them. Next morning I wanted some laths. I waited till the boy (defendant's) went by to school, and I took Putnam's cattle and a pair of steers of mine, and went to Powers' mill and got three hundred and sixty-six feet of lath boards. I hauled down two small logs. While I was gone Mr. Mellen came to exchange with his cattle. I saw him with his cattle standing in my door yard, waiting, I thought, for me. I met him at the crotch of the road, twenty-five or thirty rods from the house. I had both yoke on the sled. I asked Mellen if he had come to exchange oxen. He said he had, and went on to say he thought he had not got the real odds between the cattle, his being shod, and the others not, and said the bunch on one's jaw took five dollars off the worth of them, but did not say but he should exchange, and I thought he was going to. I said to him that we could exchange there as well as any where. He said he had a log on his sled that was rather heavy, and that my cattle were a little worried, and said he would change when he came back. I made answer that probably Putnam would be out that afternoon and want the cattle. Mr. Mellen said if he does he can take the cattle and come right along ; it will be right on his road and wont hurt him any. I was ready then to deliver Mellen the cattle. I went home and he towards the mill. Next morning Mr. Palmer came with an order for the Mellen cattle. We started on with the Putnam cattle to Jason Blood's, and found Mellen there. Asked

him if he was going to exchange cattle? He said he was not, without Mr. Putnam came out and made the trade good. I asked him what would make the trade good, and he said more than ten dollars. I then asked him if he did not agree to trade for twenty dollars. He said, " I did yesterday — yesterday I should have traded for twenty dollars." He said if the cattle had been there at my house, and Putnam had left the money or note at my house, he should have exchanged, but " I shan't to-day." I asked if Putnam did not pay him some money. He said he did — three dollars, and called his boy for a witness of it. Then I said there is only seventeen dollars you claim. He said, " that was all yesterday, but to-day I shan't trade so." I told him if that was all the stick there was, he could have the money. He said he did not want it, and should not take it. I asked him if the plaintiff agreed to leave a note. He said " No, but it was the natural consequence he should. I would not take his word for a dollar." He said he was to wait till the 15th of January for his money. I asked him where the cattle were, and he said they were up in the barn, and anybody might take them that had a mind to. I told him I had nothing to do with it at all — that it was nothing that concerned me any way. He said he should not deliver them — should not trade. I don't know as any money was offered him.

*Cross-examined.* I left home for the mill past nine o'clock; went one and a half miles to mill — hurried back. It was just at dark that Putnam returned and said he had traded. Said he had paid three dollars, and was to pay seventeen dollars; said nothing about note or leaving money. I got back five minutes past eleven; saw Mellen in my door yard when I came across Hildreth's lot, fifty rods off. Mellen said the cattle were a little worried, and the log pretty heavy — guessed he would go with the others. They were worried, though not sweaty nor panting. He said that people laughed at him because his oxen were so homely, and that he had rather eat a homely one than one that had a bunch on his jaw. It was sloppy, not slippery. When Mellen came back, he said he thought he had better go to mill

with the big cattle, and said, " I will change when I come back."
I did not see him come back. Putnam did not tell me to pay
Mellen any money, or give him any note.

*Re-examined*— Mellen made no complaint about deceit. Mel-
len talked about the bunch the first day — any body could see
it. Mellen, at 'Blood's, said Putnam might have his three dol-
lars any time, but he should not exchange. I had not the
money at Blood's myself, but Palmer said he hád the money and
would let me have it.

*George A. Willey's* testimony. I went to Mellen's with Putnam,
the day that father and Mr. Palmer went. Putnam asked
Mellen if he was a going to exchange cattle, and he said he was
not. Mr. Mellen told Putnam he could have his money back
if he wanted it. Putnam said he did not want it; he wanted the
cattle.

*John Palmer's* testimony. I hired a pair of cattle of Put-
nam to work for the winter. He gave me an order on Mr. Wil-
ley for a pair of cattle. I started to go to Mellen's and met him.
I asked him about the oxen, and he said he should not change.
I asked him why, and he did not make me any definite answer.
He said the cattle had been worked rather hard that morning—
recollect nothing more. I went back to Mr. Willey's and told
him Mellen would not exchange. Willey and I took Putnam's
oxen and drove up towards Mellen's house. At Mr. Blood's,
Mellen came out. There was no inquiry whether there was an
agreement for a note. There was money there ready for him ;
I had it, and offered it to Mr. Willey. Mellen said he did not
want it, and would not take it.

Mellen said his cattle were in his barn, and if any body dared
take them out they might. Nothing was said by Mellen whether
Putnam was to give him a note or not.

*Cross-examined.* I had no authority from Putnam to offer
the money to Mellen. The testimony of this witness in other
respects was the same as Willey's as to what occurred at Blood's.

*George O. Willey.* I was present at my father's when Mel-
len came with his cattle. Mellen remained fifteen to twenty

minutes — asked me where father was — told him he had gone to the mill with the cattle after lath-boards, and I expected him in a few minutes — expected him then. It was about ten o'clock, I should think. Father returned in about twenty-five minutes after Mellen came with the cattle. Father started to go to the mill about eight o'clock, I think ; might be a little earlier.

*Cross-examined.* Saw the cattle come round L. part of the house, the first I saw. I have no means to fix the length of time Mellen was there, or before father came. I was waiting for the boards to use, and father came soon after Mellen left. He came, say, at half-past ten.

At the close of the plaintiff's evidence, the defendant moved for a nonsuit, because of a variation between the declaration and the proof, and because the contract proved had not been broken by the defendant nor rescinded by the parties.

Whereupon, with the consent of the parties, the questions arising in this case were reserved for the consideration of the Supreme Judicial Court, a nonsuit to be ordered, or a judgment to be entered for the plaintiff, for such damages as shall be agreed upon by the parties, or assessed by the clerk, according to the opinion of that court upon such facts reported as are not in dispute ; but a new trial to be ordered if the disputed facts are material.

If upon this case it is material and competent that it be found as a question of fact, upon the evidence reported, what was the actual agreement or understanding of the parties in respect to the giving of a note, or other security for the payment of the seventeen dollars at the time the exchange was to be made, the fact is in dispute. The defendant also claims that Willey went off with the Putnam oxen as early as eight o'clock, and that he waited for him as much as two or three hours, and that the Putnam oxen were in fact injured by the use that morning, which the plaintiff denies. But the defendant also contends that the action upon the undisputed facts cannot be maintained — 1. Because the plaintiff does not allege and prove an offer of a note or other security for the seventeen dollars, nor that he was ready

to furnish the same, if required. 2. Because the Putnam oxen had been put to work that morning, instead of being left for the defendant. 3. Because the contract had not been broken by the defendant, nor rescinded by the parties. The declaration was made a part of the case.

It was ordered that the questions arising on the case be reserved and assigned to the determination of the Supreme Judicial Court.

*Carpenter* and *Morrison*, for the defendant.

To the first point stated in the case, we cite *Fairbanks* v. *Dow*, 6 N. H. 266, and *Kimball* v. *Grover*, 11 N. H. 381.

To the second point we say that the effect of the contract was to pass the property, though not the right of possession until performance. 2 Kent's Com. 492–495 ; Chitty on Con. 443 ; *Kimball* v. *Grover*, before cited. So that the right of either as to using the cattle in the interim is analogous to that of a bailee, and a bailee could not have used them as did the plaintiff. Story on Bail., secs. 89, 90.

Under the third point we say that time and place were of the essence of the contract. The plaintiff was not ready during the entire period. *Bank of Columbia* v. *Hagner*, 1 Pet. 455 ; Story on Con., sec. 494 ; 1 Met. 51, *Staples & a* v. *Franklin Bank ; Rawson* v. *Johnson*, 1 East 203 ; *Merritt* v. *Rane*, 1 Stra. 458, cited by counsel in Rawson *v*. Johnson.

The supposed waiver was without consideration, if there were no other objection to it.

*Felton* and *Hibbard*, for the plaintiff.

Was the legal effect of the contract that Putnam should give Mellen a note or other security ? We say it was not, and that there was no contract, express or implied, of that legal effect. 1 Parsons on Contracts 447.

The oxen were to be exchanged at one time, and the $17 were to be paid at another and more remote time, and so the promises to exchange, and to pay, were independent promises, not

mutual conditions to be performed at the same time. 1 Chitty's Pl. 311, 312, 313 and 314; *Robb* v. *Montgomery,* 20 Johns. 15; *Cunningham* v. *Morrell,* 10 ditto 204; *Barns* v. *Mudun,* 2 ditto 145; *Dox* v. *Dey,* 3 Wend. 356; *Goodwin* v. *Holbrook,* 4 Wend. 377; *Kane* v. *Hood,* 13 Pick. 281; *Couch* v. *Ingersol,* 2 Pick. 292; *Campbell* v. *Jones,* 6 Term 571; *Heard* v. *Wadham,* 6 East 629; *Seers* v. *Fowler,* 2 Johns. 272; *Smith* v. *Woodhouse,* 2 New 239.

The contract in this case was executory, and the property did not pass without delivery. Each party might use his own until delivery, taking care not to injure it in the use. Story on Bailments, secs. 329, 330 and 331, and 89–92.

If Mellen could have objected to performing the contract, on the ground that the Putnam oxen had been used instead of being left at Willey's for the defendant, he waived that objection. *Wiggin* v. *Scammon,* 7 Foster 360.

The question of waiver or not, is, as a general rule, a question of fact for the jury. But in this case the facts are few and simple, and the evidence relating to them is all one way, and it was the duty of the court to instruct the jury that if they believed the evidence they should find a waiver. *Fox* v. *Harding,* 7 Cush. 520; *Thayer* v. *Wadworth,* 19 Pick. 352; *Wiggin* v. *Scammon,* before cited.

The defendant said that Putnam might take the oxen at his house, and thus induced Putnam to be at the trouble of going for them, and so waived the right to rescind. *Wiggin* v. *Scammon,* before cited, page 364.

If the legal effect of the contract was that security should be furnished for the $17, the security was sufficiently offered by Willey & Palmer in offering to pay the money. *Goodale* v. *Wheeler,* 11 N. H. 424.

It is always safe to set out a contract in the terms of it. 1 Chitty's Pl. 336. According to this principle, the offer of performance by Putnam is substantially averred in the second and third counts, even if the legal effect was that security should be furnished.

EASTMAN, J. The plaintiff's declaration contains several counts which may be stated in substance as follows : The first alleges that on the 27th day of December, 1854, it was agreed between the plaintiff and the defendant that they should exchange oxen, and that the plaintiff should pay the defendant twenty dollars, as the difference ; seventeen dollars of it to be paid on the 15th day of January, 1855 ; and that the defendant should, on the next day, deliver his oxen to the plaintiff and receive the plaintiff's in exchange therefor ; that the plaintiff at the same time paid to the defendant three dollars, part of the twenty dollars, in earnest of the bargain ; and that on the next day, to wit, the 28th, the plaintiff offered to deliver to the defendant his oxen, and requested the defendant to deliver his, the defendant's oxen, to the plaintiff, which the defendant then and ever since has refused to do.

The second count is substantially the same as the first, with this exception, that it alleges the agreement to be that the defendant was to send his oxen to one Willey's on the morning of the 28th of December, where the plaintiff's oxen were kept, and that the exchange was to take place there ; and it avers that the plaintiff's oxen were then ready to be exchanged, and were offered to the defendant, but he refused to make the exchange.

The third count sets forth that the exchange was to be made on demand ; that a demand was made on the 28th of December, the day after the agreement, and that the defendant refused to make the exchange. Upon these counts the question is presented as to the nature and legal effect of the contract between the parties, and whether the action can be sustained upon the evidence.

Williams, in his note 4 to *Pordage* v. *Cole*, 1 Saunders 320, after examining the authorities with much care, states the rule as clear and indisputable, that where there are several covenants, promises or agreements, which are independent of each other, one party may bring an action against the other for a breach, without averring performance on his part ; and that it is no excuse for the defendant to allege in his plea a breach on the part of the

plaintiff. But where the covenants, promises or agreements are dependent, it is necessary for the plaintiff to aver and prove a performance on his part to entitle him to an action for the breach : That covenants, &c., are to be construed to be either dependent or independent of each other, according to the intention and meaning of the parties, and the good sense of the case, and that technical words should give way to such intention.

Among the rules laid down as showing where performance is necessary to be averred, one is, that if a day be appointed for the payment of money, or part of it, or for doing any other act, and the day is to happen or may happen *before* the thing which is the consideration of the money or other act is to be performed, an action may be brought for the money, or for not doing such other act before performance ; for in such case it is apparent that the party relies upon his remedy, and does not intend to make the performance a condition precedent. But when a day is appointed for the payment of money, and the day is to happen *after* the thing which is the consideration of the money is to be performed, no action can be maintained for the money before performance. 1 Saund. 320, note 4, and authorities there cited ; 1 Chitty's Pld. 313 ; *Thorpe* v. *Thorpe,* 1 Salk. 171 ; 12 Mod. 462; *Dox & al.* v. *Dey*, 3 Wendell 356. And where the agreements or covenants are independent as to one party, they are necessarily so as to the other ; so that if any act is to be done, service rendered, or article delivered by a specified day, and the money to be paid therefor is not to be paid till a subsequent day, an action can be maintained for a breach of the agreement before the money becomes due. Thus in *Dox & al.* v. *Dey*, 3 Wendell 356, it was held that agreements are independent where, on the one hand, an article of merchandize is sold and agreed to be delivered on demand, and on the other, payment is deferred until five months after the date of the contract ; and that an action may be maintained for the non-delivery of the article, without averring performance on the part of the plaintiff.

In *Goodwin* v. *Holbrook*, 4 Wendell 377, it was held that covenants are independent where there is a covenant to convey by a

day certain on the one part, and such day precedes the time of payment of the consideration.

To the same effect are *Campbell* v. *Jones*, 6 Term 577; *Seers* v. *Fowler*, 2 Johns. 272; *Heard* v. *Wadham*, 6 East 629; *Couch* v. *Ingersoll*, 2 Pick. 292; *Terry* v. *Duntze*, 2 H. Blk. 389; *Kane* v. *Hood*, 13 Pick. 281.

In *Fairbanks* v. *Dow*, 6 N. H. 266, Dow agreed in writing to sell Fairbanks his farm for two hundred and fifty dollars, to be paid one third yearly from the date of the writing, with interest annually. No time was fixed for the conveyance to be made, and it was held that no action could be maintained against Dow for not conveying the land, without showing that security for the payment of the purchase money had been tendered and a deed demanded.

This decision appears to have proceeded upon the ground that as no time was fixed for the deed of the land to be made, the duty to convey was dependent upon the payment of the purchase money; and that consequently the right to demand a conveyance did not arise till after the payment of the money; or at least that a suit could not be sustained till after security was offered for the payment, and a deed demanded.

Where two acts are to be done at the same time, as where one party covenants to convey an estate on a particular day, and in consideration thereof the other party agrees to pay a certain sum of money on the same day, neither can maintain an action without showing performance of, or an offer to perform on his part; and this rule is said to apply particularly to all cases of sale. *Callonel* v. *Briggs*, 1 Salk. 112, 113; *Thorpe* v. *Thorpe*, 1 Salk. 171; *Goodisson* v. *Nunn*, 4 Term 761; *Porter* v. *Shepard*, 6 Term 665; *Lancashire* v. *Killingworth*, 2 Salk. 623; *Morton* v. *Lamb*, 7 Term 125.

The plaintiff's declaration sets forth a contract, containing agreements both dependent and independent. The agreement to exchange the oxen on the 28th of December was mutual. There was something to be done by both parties on that day. Mellen, the defendant, was to deliver his oxen either to the plain-

Putnam *v.* Mellen.

tiff or at Willey's, or on demand, according to the different counts; and Putnam, the plaintiff, was to deliver his or have them ready to be delivered, at the same time, to Mellen. Neither could maintain an action against the other without showing performance or an offer to perform to that extent; and the declaration contains the necessary and proper averments in this respect. But the agreement to pay the seventeen dollars on the 15th of January following was an independent undertaking; a promise not to be performed till that day; and hence it was not necessary either to aver or prove the payment of the money, for it was not a condition precedent to the exchange of the oxen.

The declaration appears to set forth a good cause of action, and the averments are sufficient. Was the evidence competent to sustain the declaration? It tends to show a contract entered into on the 27th of December for an exchange of oxen on the 28th, to be made at the house of Willey. It tends also to show that Putnam's oxen were at Willey's on the morning of the 28th, ready to be delivered, and again through the day after Willey's return with the laths. The evidence was competent to show that the cattle were ready at the time and place agreed upon. They were within twenty-five rods of Willey's when Willey and Putnam met. No precise point was agreed upon where the cattle should be, and no special hour fixed for their exchange; and the contract, we think, was substantially complied with by the plaintiff. And further, if there could be any technical defence on the ground that Putnam's cattle were not there at the precise time when Mellen came, we should probably hold that it was waived by the subsequent conduct of Mellen. *Wiggin* v. *Scammon*, 7 Foster 360; *Thayer* v. *Wadsworth*, 19 Pick. 349. And the same may be said in regard to their being worked; the defendant waived all objection on that account. No complaint was made that they were injured or had been used.

It was not necessary that Putnam should have left his note for the seventeen dollars with Willey, or given security for the same. The case is not parallel with that of *Fairbanks* v. *Dow*, for in the latter the time when Dow was to make the conveyance was

not fixed; and the payment of the money was regarded as precedent to the obligation to give the deed. Here the contract was explicit for an exchange of the oxen on the 28th of December, but the payment of the money was not to be made till the 15th of January. There was therefore no obligation to make a deposit of the money against the day of payment, and none to leave any evidence of the debt then to accrue. The agreement showed what the contract was, and had a note been left, as stated by the defendant to Willey, it would only have been evidence of the promise to pay the money at the appointed time; and that evidence already existed by the knowledge of witnesses who were cognizant of what had taken place. There was in fact no evidence tending to show that a note was to be given.

Upon this case as presented, we see no ground upon which a successful defence can be made. The plaintiff appears to have done substantially all that he agreed to do, or all that the law required him to do, and the defendant has failed to deliver the oxen according to his contract, and must be held liable therefor.

*Judgment for the plaintiff.*