Moncrief J.
The verdict of the Jury is conclusive, unless clearly against the weight of evidence. I confess my inability, in any case proper to be submitted to a Jury to determine between conflicting statements made at a trial, to perceive the propriety of reviewing the finding, upon the ground that the twelve Jurors arrived at a conclusion not warranted by the evidence. If the evidence is so preponderating in favor of. either party that the Jury would err in not finding in his favor, it might be the duty of the Court so to instruct them,—most certainly it is the privilege of the court to so comment upon the evidence as matter of opinion. To submit a question in dispute to a Jury to settle which party is correct in the statements made, and yet practically to hold the rule of law to be that if they find other than one way the verdict will be set aside, I cannot regard as correct.
In the present case there was a conflict of . testimony as to the cause of the delay; whether occasioned by the defendant or the plaintiff. The Jury found in favor of *267 the plaintiff, and I am not disposed to differ from their finding; there is abundant evidence to support it. (1 E. D. Smith, 85, 89.)
The exceptions taken to the testimony of the plaintiff Stewart had reference to conversations with the defendant, and tended to establish a material issue between the parties ; the certificate provided for in the contract to be given by Mr. Thomas, the architect, was not to be conclusive upon the defendant. While a certificate was a condition precedent to the right of the plaintiff to demand payment, it by no means precluded the defendant from claiming or showing that the work had not been done or was imperfectly or improperly done.
The contract provides that $3,000 dollars shall be paid by the defendant, “when all the works are completely finished and certified by the architect to that effect.” It is not disputed that the works were all completely finished at the time Mr. Thomas, the architect, gave the certificate in question. The architect certified that the plaintiffs “ have completed ” the mason work. The contract of the plaintiffs was for the mason’s work.
If the certificate given by the architect did not, in very terms, follow the words of the contract between the parties, it contained the substance thereof; and it should be borne in mind that this certificate is prepared and delivered by the agent of the defendant; it is not unjust to say that if the criticism of his counsel upon this certificate could be considered as well founded, the architect would have declined to give a certificate. A certificate insufficient in form, or defective in something that the contract calls for, is such an omission or inadvertence as should be indulgently regarded. (Comstock, J., 17 N. Y. R., 173.) If it was imperfect the error originated with the agent of the defendant; it could have been returned to the plaintiffs, with the nature of the objection pointed out; if received without objection, or received without stating that the refusal to pay was upon the ground of some specified defect, it must be held to conform to and answer the *268 requirement of the contract; the defendant could waive defects, if any there were in the certificate. (2 Greenl. on Ev., § 394; 20 Pick., 389.) There was evidence tending to show that he made no objection to the certificate. The objection to payment was put upon the ground of damages sustained by non-performance at the time fixed by the contract. By the terms of the contract it is provided that “ should any dispute arise between the parties, respecting the construction or meaning of the drawings and specifications, the same shall be decided by Griffith Thomas, architect, and his decision shall be final and conclusive.” A dispute did arise concerning the “ sheath-piling,” and the defendant referred the plaintiff to Mr. Thomas, promising to pay $200 therefor if he should so determine. Mr. Thomas decided that the work was extra, beyond the contract, and that the defendant should pay.
The charge of the Judge fairly submitted the whole case to the Jury, and containing no misstatements of the rules of law, the evidence supporting the verdict, and none of the exceptions being well taken, the judgment and the order denying the motion for a new trial, should be affirmed.
Robertson, J.
The contract, in this case, was under seal and inter partes; the only parties to it were the plaintiffs and defendant. By it, the plaintiffs covenanted that they would, on or before the 1st of February, after it was executed, “ erect and finish a new building * * upon “ lot 88, Leonard street, * * agreeably to drawings and “ specifications made by Griffith Thomas, architect,” signed by the parties and thereto annexed, “in a good, workman- “ like and substantial manner, to the satisfaction of such “ architect,” and would “ find and provide such good, proper “ and sufficient materials of all lands whatsoever, as should “ he proper and sufficient for completing and furnishing all “ the masons, hricldayers, plasterers and other worlcs of the “ said building, mentioned in the mason’s specifications.” The defendant only covenanted by it to pay the specified price, by installments, as the work advanced.
*269 There were also some other stipulations in such contract, to the effect that all work exhibited on either the drawings or specifications, should be done without extra charge; that the plaintiffs should provide all the materials, labor, scaffolding, implements, moulds, models and cartage. Provision was also made in it for compensation for extra work, the decision of any controversy by the architect, and saving the defendant from responsibility for loss or damage to the works or materials.
The specifications annexed to such contract provide for furnishing materials and doing work on various parts of the building, including excavations, removal of rubbish, filling up, mortar, sheath-piling, shoring, base courses, cement, vaults, cesspools, work of brick, brown stone, blue stone, marble, granite and iron, flagging, shutters and railings of iron, and plastering; no mention is made therein of any wood work, except that the first and second floors are required to be elevated from front to rear a certain height, the foundations to be leveled to the height of the cellar floors, enough strong iron anchors are required to be provided for floor and roof-beams, as directed, and cellar floors are to be deafened.
There is not a word in the whole contract or specifications tending to show that any wood work was necessary to be done to enable the plaintiffs to complete the building or the mason, iron, and plastering work, as they undertook it. Ho testimony in the case establishes that the work undertaken by the plaintiffs could not have been done without the aid of any carpenters’ work; and although not having knowledge enough judicially, or otherwise, of the art of building houses, to pronounce positively whether it could or not, from the contract and specifications I should be rather inclined to think it could.
The plaintiffs’ work was not completed within the designated time, and notice was given to him by the defendant that he held him responsible for his neglect. Damages for the delay are claimed in the answer, and the plaintiffs in their reply set up a proximate and substantial com *270 pletion of the work by the time fixed, and that the delay was caused by the acts of the defendant and the carpenters employed by him in erecting such building.
The only testimony in regard to delay was that of one of the plaintiffs, the mason, blacksmith and plasterer, in their employ, and the architect; the first claimed a delay of five or six weeks by a refusal or neglect of the defendant to sheath-pile an adjacent lot, which, by the terms of the contract they were bound to do, and for which the defendant ultimately agreed to .pay; also a further delay of a week or ten days by the failure of the carpenters employed by the defendant to put on part of a tier of beams, as the wall for supporting the ground floor was completed. He testified that “ the mason work was finished “ about the 20th of November, there was some little to do “ with the plastering after that; it became very cold “ weather in the month of December and the plastering “ was interrupted by it.” He then proceeded to explain such interruption by stating “ that, from that time there was “no mason.work to do of any consequence. * * About “ the 1st of January the plastering was finished, all that “ could he finished, with the exception of some which was “ to be done in the vault which was altered after the first “ of January,—some little plastering which could not ham “been done previous to that.” The only work which he could specify as remaining to be done after the 1st of February was a dumbwaiter and platform, which were delayed by the alteration in the vault until the 20th of February, after which nothing was done except stopping leaks, and he stated that the work was' substantially finished at that last day. He did not venture to claim the delay in the plastering as being due to any neglect of the carpenter or even to assert under oath that he could not have completed the work by the day fixed, notwithstanding the delays; his mason, however, charged more boldly the delay in the plastering upon the carpenters; he testified that “ it was necessary to have the stairs up before he “ completed the plaster work and likewise the windows in *271 “ at that time of the year: the stairs were not up nor the “ windows in; we got the brown coat on on the 21st of “ November; we were delayed with the other work till the “ 16th of December.” He, however, further stated that “ patching and repairing is a necessary part of the work; “the carpenters, gasmen and plumbers are very likely to “ break a part of the wall; * * we were delayed in the “ cold weather on account of the windows not being in; “ if they had been in, the cold would have been kept out.” He does not venture to state that the delay caused by the carpenters rendered it impossible for the plaintiffs to complete the work by the day fixed in the contract, and his idea of the word “ necessary ” seemed to be that the carpenters’ work, being put on after plastering, would break it, and that the want of windows made the mortar freeze. His employer does not seem to have attributed the same consequences to the same cause of delay. A blacksmith employed by the plaintiffs testified that he was interrupted in his work, by want of being furnished with the dimensions of inside iron shutters by the carpenters. The architect, however, testified that he could have got his proportions from what was done, and further testified that the carpenters’ work, on which the masons’ work depended, was not, and could not be finished before the 1st of February “because there were some parts of the iron and “ plaster work that had to be done at that time in connec- “ tion with the carpenters’ work, but not a particle of iron “ work, which depended upon carpenters’ work.” A plasterer testified that he got through with the necessary patching about the beginning of February. Other evidence in the case established that the building was not surrendered to, and taken possession of by the defendants as complete, and the architect’s certificate given, until the end of March.
No witness pronounced the completion of the plaintiffs’ contract in time, an impossibility, notwithstanding all the delays, and the only inference, to be fairly drawn from the testimony, was, that a little extra exertion, or a few more hands, would have enabled the plaintiffs to have finished *272 their labors by the 1st of February, as. all that remained was patching the plastering, particularly, as they do not seem to have proceeded with indefatigable diligence in completing the work to be done by them, having delayed the carpenters on their work.
The question, therefore, arises whether, unless the delays produced by other workmen rendered it impossible for the plaintiffs to complete their work in time, they are excused for not doing so. In Holmes v. Guppy, (3 Mees. & W., 387,) it was admitted on the trial that the delay in giving possession rendered it impossible to completé the contract in time, and the decision was put on that ground. In Thornhill v. Neats, (8 Com. Bench N. S., 831,) it was pleaded that the doing of additional work was so mixed" up with the contract work, and formed part and parcel thereof, as to render it impossible to complete the work within the time. Williams, J., doubted if the pleading was good in equity, for not averring that the rest of the work was done in time, and Keating, J., held that the subsequent agreement prevented performance. It is very evident that such a contract cannot be interpreted into one to erect a building by a certain number of days’ work, so that if the builder is prevented, by the delays of other workmen, from going on with his work, he is to be excused; if such be the law, the delay of an hour would be sufficient to make it a contract at large, as laid down in Thornhill v. Neats, (ubi sup.): Every one who contracts to do a work by a certain day, is bound to do it, unless it is rendered impossible by the acts of the party to whom he is bound; a mere temporary hindrance is not sufficient, although he may recover damages therefqr.
If, therefore, the plaintiffs were bound to make out that the delays of the defendant and his workmen had rendered it impossible for them to complete the building by the stipulated time, (and there was no direct evidence that they had produced such a result in this case, or even of the period indispensably necessary to finish the mason and iron work of such a building,) it is plain ho data were *273 furnished to the Jury, from which legally and properly to infer that the defendant or his agents had deprived the plaintiffs of the power of complying with (heir obligation ; and mere evidence that they had been delayed six, eight or ten weeks in the performance of then work, would not alone, without such other evidence, assist the Jury in coming to a correct conclusion, whether or not such delay rendered the work impossible within the allotted period 5 it would be as much a matter of conjecture for them as if this Court were now to pronounce upon the effect of such delay. In this case, too, the plaintiffs made no complaint to the defendant of any delay except the sheath-piling at the beginning, for which he was not responsible, and they only bring up such delays now as an excuse, after failing to perform their contract.
It is true, no request was made to the Court to instruct the Jury, that, there being no evidence to show that the delays proved had rendered it impossible for the plaintiffs to complete the building by the first of February, they were to disregard it in determining the defendant’s right to recover. Hor did the learned Judge charge that they were at liberty to determine, in reference to such claim, whether such delays had put it out of the power of the plaintiffs to perform; but he instructed them that the plaintiff was liable, “if he had not shown that he was pre- “ vented by the carpenter from completing his work by “ the stipulated time,” thus strongly implying that if he had so shown, he was not so liable. He had previously charged: “that a failure of the carpenters to do what was “ indispensable to the progress of the worlc in the contract “ was the same thing as a delay or prevention of the plain- “ tiffs from performing it by the stipulated time, in conse- “ quence of the act of the defendant or the carpenters “ employed by him,” and that, “ if the delay was such as “ to throw the completion of the worh beyond the first of “February, the plaintiff was entitled to recover.”
This instruction certainly does not conform to the views before urged, and the learned Judge seems to have fallen *274 into the error of supposing either that the time consumed in the delays was necessarily to be added to the period allowed in the contract, so as to allow the plaintiffs additional time, or that the Jury were at liberty, without any proof of the time indispensably necessary for the work, to infer that such delays took away all power from the plaintiffs of completing their contract within the time, and rendered it a physical impossibility, by any reasonable diligence to do so; with all due respect, I have been unable to bring myself to that conclusion. It was an error even in regard to the plaintiffs’ right to recover, which, although fatal to the present verdict, might be immaterial on a new trial, because there was strong evidence of waiver as to that; but it certainly misled the Jury as to the defendant’s recoupment, who established, by uncontradicted evidence, damages from the delay in completing the building.
There seems to me also another error in the disposition of this case. The contract was under seal, and must be construed according to the legal interpretation of the language contained in it; not a word is said in it of any obligation by the defendant to do anything but pay the installments of the price as they become due; nothing is said of any carpenters’ work to be done to/the building. The obligation of the plaintiffs is simply to do a certain amount of work, or complete á certain building by a certain day, and they undertake to furnish all the instruments, implements, and utensils by which that work is to be done; and it is now proposed to insert in the instrument an implied condition to qualify the plaintiffs’ obligation, to wit: “that the defendant shall employ carpenters and “other workmen, to convert such building or enclosure “into a store, and that such workmen shall proceed to “ do all the work to be done by them, with such diligence “ as to facilitate to the utmost the completion of the work “undertaken by the plaintiffs within the time allotted,” These are plainly the terms of the condition, for this doctrine must proceed upon the theory or presumption of law *275 that the plaintiffs have taken the minimum or shortest possible limit for doing the work, and that any delay, however brief, deprives them of the power of doing it within that time; in other words, that the plaintiffs are entitled to find, at every stage of their work, the moment they have completed it, every succeeding operation of the carpenters completed in the time in which it could have been done by reasonable diligence, otherwise that they are discharged by any delay of any considerable duration beyond that.
I assume that it will not be contended seriously that anymore delay of the carpenters in facilitating the progress of the plaintiffs’ operations, is equivalent, in, its effect on the plaintiffs’ liability, to a positive obstruction to them, such as the taking away the possession of the ground from the builders by the owner would be. A refusal to furnish facilities can never be equivalent to a positive hindrance, unless by the terms of the contract such facilities are the only ones to be employed; the principle, therefore, contended for by the plaintiffs’ counsel cannot proceed upon the ground that the defendant interposed obstacles, because they themselves could have employed carpenters to do the neglected work.
I am unable to perceive how an undertaking to complete a specified piece of work by a specified time can be hampered, by construction, with the condition that the person for whom the work is to be done shall furnish any facilities for doing itthere is no rule of interpretation invoked to sustain it, but merely, that carpenter work being necessary, the defendant was bound to furnish it, and the contract must be so construed. I understand that a person who undertakes to do anything, undertakes thereby to do all things necessary to enable him to complete it, even to the surmounting of impossibilities, or to be responsible in damages for not doing so. There is no special privilege allowed to a builder’s contract, which makes it an exception, and renders all the precise terms of it, as regards the builder’s obligation, nugatory, but *276 imposes duties not specified or alluded to in it,- on the owner. The Court clearly can take no judicial cognizance of the necessity of carpenter work to enable a mason to complete his work, and if it could do that, it could not assume that the onus of supplying it lay upon the owner, who merely covenanted to pay the price.
It is true it may be said that such a construction would involve a great hardship upon the plaintiffs, because they would then be bound to find carpenters, or build without their assistance; that may be so, but the Court would not be bound to relieve from the consequences of an undertaking deliberately entered into, by grafting qualifications to make thehardship less. But this is rather an imaginary than a real evil. In this case, carpenters were employed by the defendant, who undoubtedly preferred having that work done, to leaving the plaintiffs to complete their work without it, as they had a right to do. This was what the plaintiffs relied on, to wit, the interest of the defendant, and not on any absolute obligation of his to furnish carpenters’ work. They, as well as the defendant, took the risk of such carpenters doing the work within the time agreed on, so as to enable them to complete their contract within that time, and are not now to throw the whole responsibility on the latter. Suppose the owner of a lot of land makes two separate agreements with a mason and carpenter, to finish their part of the work of a building by a certain day, and either of them finished his work by that day, but does it in such a manner as to delay the other beyond the day, could the owner sue for damages by reason of that delay ? Is there anything in this contract enabling the defendant to sue the plaintiffs for damages in delaying the carpenter ? If there is, I have been unable to find it, and if not, is not the owner entirely at the mercy of contractors, in regard to delays ?
But it may be proposed to modify such proposed condition further, by inserting in it, that the defendant shall ■cause the carpenters’ work to be done from time to time, ,on request of the plaintiffs, because it may seem hard that *277 the owner, after making his contract, should be compelled constantly to watch the progress of the building to see that each contractor did his duty to the other,—that not a. moment’s time was lost in putting beams on the walls or walls over the beams. If so, as the defendant was never applied to, except in regard to the sheath-piling, the plaintiffs can only sustain their case by making the carpenters the defendant’s agents; and this certainly they cannot do; a mere contract with them to do certain work, does not make them agents, to bind the defendant, to discharge the plaintiffs from the performance of their covenant; there is nothing in the contract in question to make them so; and it would certainly be a liberal interpretation of it to hold that it not only made it incumbent on the defendant to employ carpenters, but that every carpenter §o employed by him was an agent, notice to whom, by the plaintiffs, should be equivalent to notice to his principal; if so, on a similar contract with the carpenters, the plaintiffs would be the defendant’s agents, and the conduct of or conversation between the two contractors might give away rights of the defendant more valuable than the lot on which the building was erected.
I therefore am clearly of the opinion that neither any rule of interpretation of sealed instruments nor the nature of the contract, warrants the interpretation of the condition in question, by which the plaintiffs’ obligation to do their work within the time fixed, is made to depend on due diligence of the carpenters to be employed by the defendant, so that a delay by the latter, although not rendering the plaintiffs’ work impossible to be performed within the time, should excuse them from such performance. And without such condition, I am still more clearly of opinion that without the slightest evidence to establish the impossibility of the plaintiffs completing such work within the time, notwithstanding the delays, the plaintiffs were not excused from performing the work, nor the defendant debarred from damages for its non-performance.
*278 The judgment should be reversed and a new trial had, with costs to abide the event.
Bosworth, Ch. J.
My brother Mobcriee thinks the judgment should be affirmed, and my brother Eobertsor is of the opinion that none of the exceptions taken by the defendant are tenable. But he thinks the defendant should have a new trial on the payment of costs, on the ground that, in his judgment, portions of the charge are erroneous, and were calculated to mislead the Jury. The Judge charged, that if there was a delay or interruption of the work of erecting the building “resulting from the omission of the carpenters to do what was essential to enable the plaintiffs to-proceed with their work, and if that delay was stich as to throw the completion of the work over the first of February, then the plaintiffs would be entitled to recover, being prevented from completing their contract in time,. by the act of the defendant, or his carpenters.” t
This charge makes the delay or omission of the carpenters to do the work essential to enable the masons to proceed with the masons’ work, equally an excuse as a delay caused directly by the defendant in person, and charges him with the consequences of their default, to the extent, that if the plaintiffs were prevented thereby from performing their contract within the stipulated time, they are deemed to have been prevented by the defendant.
The defendant did not except to this instruction, nor has he made any point on this appeal which suggests that it is erroneous. '
It is quite clear from the terms of the contract itself, that the plaintiffs only contracted to do the masons’ work mentioned in the specifications annexed to their contract, and to furnish the materials necessary therefor.
As between the plaintiffs and the defendant, the latter was to do or procure others to do the carpenters’ work. The masons’ work could not be completed, unless the carpenters’ work was performed pari passu.
*279 If, when the masons’ work had progressed so far as to be in readiness to receive the first tier of beams, it should be ascertained that no carpenters had been employed to do the carpenters’ work, of, if there had been, that they had failed and refused to go on with their contract, the defendant could not take the position that he would not employ other carpenters, and that the masons should go unpaid for what they had done, unless they completed their contract by the stipulated time, which would be a physical impossibility, no carpenters’ work being performed.
The masons are not parties to the carpenters’ contract, and may not know who are to have it, at the time their own is executed. The only parties to the carpenters’ contract, are the carpenters and the owner. If they break it and cause damage to the owner, his remedy is an action against them. And the same is true of the masons’ contract. If both are in default, and thereby severally cause damage to the owner, he has his remedy against each. But a breach by the carpenters of their contract with the owner, by which the completion of the building is delayed beyond the stipulated time, and the masons are prevented from making strict performance, cannot be the foundation of an action by the owner against the masons, nor work a forfeiture of their right to recover for what they have done under their own contract.
A contrary rule, would not only prevent the masons, who had progressed with their contract with the utmost despatch, and who, but for the default of the carpenters, would have completed it in time, from recovering any unpaid installments, but make them liable to the owners, for damages for not completing it by the contract time, although the failure to complete it was caused entirely by the conceded default of the carpenters. This would make them guarantors, that the carpenters should perform their contracts with the owner, with all reasonable diligence and despatch.
I am quite clear that there was no error in the part of the charge now under consideration, nor in the admission *280 of evidence to show that by the fault of the carpenters the plaintiffs were delayed in the prosecution of their work. (Holme v. Guppy, 3 Mees. & Wels., 387; The Great Northern Railway Co. v. Harrison et al., 14 Eng. L. & Eq., 189; Thornhill v. Neats, 8 Com. B., N. S., 831; Young v. Hunter, 2 Seld., 206, 207; Goodwin v. Holbrook, 4 Wend., 377.) The plaintiffs are excused for any delay caused by the omission of the defendant to do an act which necessarily precedes performance by the plaintiffs, and without the doing of which, performance by them is a physical impossibility, where, by the necessary import of the agreement between the parties, the obligation rests on the defendant to do such act, or procure it to be done. (Knight v. Waterworks Co., 2 Hurls. & Norm., 6.)
There being no error in the instruction now under consideration, should a new trial be granted on the ground that the evidence was insufficient to warrant the Jury in finding that the plaintiffs were' prevented by the carpenters from proceeding with and completing the work by the stipulated time?
The plaintiff, James Stewart, testifies to a delay of “ a week or teh days,” by the refusal of the carpenters to put on the first tier of beams, as is usually done in erecting buildings of this size. This occurred the last of July or early in August. George Stone testifies to a delay from the 21st of Kovember to the 16th of December, caused by the omission of the carpenters to put up the stairs and put in the windows.
On this evidence, the Court cannot hold, that the verdict is clearly contrary to evidence, or that it is not warranted by it. The Judge before whom the motion for a new trial was heard at Special Term, held the verdict could not be disturbed on the ground of its being against evidence.
Keither of the carpenters was sworn to contradict the evidence, given in respect to the delay caused by them, although one of them was present at the trial.
As to the item of $200 for sheath-piling, on the westerly side of the building in question: there is no substantial *281 conflict between the evidence of the plaintiff, Stewart; the defendant; and Thomas, the architect.
Stewart testifies, that, in consideration of making his contract $11,400, instead of $11,600, Keteltas would warrant that the store on the west side would be built forthwith." This would render sheath-piling on that side unnecessary; the owner of that lot did not build on it, and sheath-piling became necessary. The plaintiffs delayed commencing their work, on that account, upon consultation with, and by the approval of, the defendant, in the hope that the owner of that lot would build on it, and thus save the expense of sheath-piling. The defendant does not deny having the conversations to which Stewart testifies. He says, “ it was a doubtful question whether, by the contract, I was not bound” to pay for it; “I told him so, and I said, if you think you are entitled to it, I would rather pay it, if Thomas says so. * * Thomas consulted me about that matter; he said the work was delayed. I told him, in any event, to have the sheath-piling, if the building was delayed.”
Thomas says: “ I presume Stewart may have waited for the excavation of the vault on the west side, two or three weeks, but he was to give me notice when he could not wait any longer, &c. * He did so. I went immediately to Keteltas the same day, and told him; then he gave me orders to let Stewart have the sheath-piling done immediately, and to specify the price for doing it. Stewart did it; it was $200. I think he commenced next day or the day after, with the sheath-piling, and it was urged along with all practicable dispatch.”
It may be said of this branch of the case, that after the contract was executed, and after it was ascertained that sheath-piling on the westerly side would be necessary, a question arose between the parties in relation to it, and who was to bear the expense of it. That question was finally settled by the defendant promising to pay the plaintiffs $200 for doing it, and they, relying on this promise, did it. I think this subsequent action of, and agree *282 ment between, the parties, does not leave the defendant at liberty to insist that the written contract required the plaintiffs to do it at their expense.
As to the final certificate of the architect, in the case of each payment prior to the last, a certificate was produced, on which the defendant paid, without objection, and no question can arise as to their sufficiency.
By the contract, the last payment of $3,000 is payable “ when all the works are completely finished and certified by the architect to that effect.” The certificate given is, “ that Messrs. Stewart & Howell have completed the mason work to your building in Leonard street.”
“ Complete,” in common parlance, means “having no deficiency, perfect,” and the verb, to complete, means “to finish, end, perfect." (Web. unabridged.) It fairly imports that the building was completed to the satisfaction of the architect, as he gave the certificate, and also, that in his judgment, it was completed in accordance with the plans and specifications. The contract does not require that the certificate shall contain the words, “ the works are completely finished.” Any words, of clearly equivalent import, are sufficient. The completed building, includes “ the works,” and when it was completed, according to the ordinary acceptation and meaning of that word, it was completely finished;—completely, means, “ fully, perfectly, entirely.” That it was, in fact, finished in every respect, according to the contract, when the certificate was given, is free from doubt. The architect testifies that “ the mason work was completed from the 15th to the 20th of March." I think, therefore, that there is no defect in the terms of the certificate, which is an answer to' this action.
My conclusion is, that there is no ground which will justify the Court in interfering with the judgment, and that it should be affirmed.
MoírcEiEE', J., concurred in this opinion. Judgment affirmed.