done in this case. Sleght v. Hartshorne, 1 *Johns.* 149; 1 *Sell. Pr.* 480; 1 *Archb. Pr.* 215; 2 *Id.* 275.

Upon the whole case, I am of the opinion that the judgment should be affirmed.

All the judges concurred except SCRUGHAM, J., who did not vote.

Judgment affirmed, with costs.

## ENDERS v. STERNBERGH.

September, 1864; again, March, 1869.

Reversing (on the second appeal) 52 *Barb.* 222.

The contents of a document which has been lost or destroyed, without the fault of the party offering it, may be proved by secondary evidence, although such document be one, the genuineness of which, by reason of age, proves itself, without ordinary proof of its execution. In such a case the same principle of necessity which admits secondary evidence of its contents, allows proof, by testimony, of its general appearance and of its marks of antiquity.*

It is not indispensable to the admission in evidence of an ancient will or deed without ordinary proof of execution, that possession in strict accordance with the terms of the instrument be shown, if such an account of it is given as may under the circumstances be reasonably expected, and will afford the presumption that it is genuine.

Where a party claims premises by two titles, either of which is good if available, he should be permitted to introduce evidence of both titles.

Where, therefore, a party having proved title by deed, offered evidence of title to the same property by will,—*Held*, error to refuse to admit it, even though the title by deed was uncontroverted.

A grant is not to be presumed on the ground of possession and the lapse of time, except when title has been shown, by the party who calls for the presumption, good in substance, but wanting some essential matter to make it formally complete, and where the possession has been consistent with the fact presumed. Evidence being conflicting as to the possession, it is error to direct the jury to presume a grant. Per HOGEBOOM, J.

Declarations made while in possession of the estate, by an ancestor, since deceased, indicating the source of his title, with the fact that the one

---

* See Graham v. Chrystal, reported in this series.

under whom he claimed had been in possession, may be proved by witnesses who heard them, as evidence of documentary title.

In an action of ejectment in which there was such evidence of contradictory declarations, and the evidence was also conflicting as to whether the land in question was or was not included in a will and deed by a very general description;—*Held*, that the cause ought to be submitted to the jury, and that it was error to direct a verdict for defendant.

Peter W. Enders and others sued Adam Sternbergh and others, in ejectment, in the supreme court, to recover a lot of land containing one hundred and six acres, lying in the Sternbergh patent, and another lot of land containing sixty acres, lying in Morris and Coeyman's patent.

*First Appeal : September,* 1864.

On the first trial they recovered the sixty acres in Morris and Coeyman's patent, lying in the town and county of Schoharie.

The facts were stated as follows, in the opinion of HOGE-BOOM, J., below :

" The plaintiffs are children of Catharine and Elizabeth Enders, who were grandchildren of of Lambert Sternbergh 1st, who died in 1765, and children of his son, Adam, who died in 1764. The latter left three children, Lambert 2nd and said Elizabeth and Catharine, and left also a will, claimed to cover the premises in question, in which he devised an estate for life to his son, Lambert 2nd, with remainder over to his daughters, Elizabeth and Catharine. Under this will the plaintiffs claim title to the premises in question. Lambert 2nd died in 1829, leaving a son, Adam, who has two sons, John and Lambert, and the three latter are the defendants in the suit.

" They claim title to the premises under their father and grandfather, Lambert 2nd, under an alleged will of Lambert 1st, sometimes called the Patentee, devising the premises in question, as is alleged, to his grandson, Lambert 2nd. The latter also claimed title by deed from one Adam (sometimes called ' crazy Adam ') Sternbergh, May 17, 1785, the latter being the eldest son of Jacob Sternbergh, who was himself the eldest son of Lambert 1st.

" The defendants claimed that if their title failed under the will of Lambert the Patentee, they could still trace a successful title to themselves under the deed of crazy Adam, who, it was

Enders *v.* Sternbergh.

claimed, in default of a will, was entitled to the premises by descent under the laws of primogeniture.

"The plaintiffs claimed that there was no sufficient evidence of any seizen of the premises in Lambert 1st, at all,—or that his son Adam, the testator under whom they claimed, ever derived his title from his father, Lambert the Patentee. Lambert 1st had other sons, Abram, the father of Elizabeth Enders, one of the witnesses in the case, and Nicholas and David, executors of his alleged will; the latter, David, also having children, Henry, Philip and Peter, one of whom (Philip) had a daughter, Christina, wife of Caleb Carpenter, the latter (Caleb) being also a witness in the case, and one who, at the instigation of his wife or her uncle, (in 1844 or 1846,) burnt up the old will of Lambert the 1st, under an apprehension that it would, if discovered, endanger their title to a portion of the real estate of Lambert the elder, of which they were in possession.

"One of the leading questions in the case arose upon the exclusion by the judge, at the trial, of copies of this will, one which had been made by Carpenter some ten or twelve years before the time he burned it; he having received from his wife, and had in possession the original some seven or eight years, from about the period of his marriage. Another in the handwriting of General Gebhard (who was dead), purporting to have been copied December 27, 1829. A third in the handwriting of Hermanus Bouck, who died in 1831 or 1832. A portion of this will, alleged to embrace the premises in question, was also copied into the aforesaid deed of crazy Adam to Lambert Sternbergh 2nd, which also referred to and corresponded with the date of the will in question.*

"A motion for nonsuit was made in the case, upon the ground that the suit having been commenced November 28, 1853, more than twenty years had elapsed since the death of Lambert 2nd, which took place in 1829, and, therefore, the plaintiffs' right was barred by the statute of limitations.

---

* The provision in the will on which the defendants relied was as follows:

"*Item*, also, I give unto my grandson, Lambert Sternbergh, three hundred acres of land, which his mother now has in possession, or two lots."

"Much evidence was given on the part of the plaintiffs of the parol declarations of Lambert 2nd, during the time he was in the possession of the premises, tending to show that he had but a life estate in the premises in question, most of which was objected to by the defendants as incompetent, and exceptions were taken to its admission.

"Similar declarations of the defendants themselves were also introduced in evidence. These were met by counter testimony, on the part of the defendants, of declarations of Lambert 2nd, tending to show that he claimed an absolute title in fee."

*The motion for nonsuit was denied.*

The judge charged that if Adam Sternbergh (the testator) died in possession, leaving a will, the will *prima facie* gave a title to the plaintiffs; that if Lambert 1st was originally the owner of the premises in question, the jury might presume a conveyance from Lambert 1st to Adam, if they were satisfied that such conveyance had been made.

To this portion of the charge the defendant excepted. The plaintiffs obtained a judgment in their favor, and the court at general term having refused to order a new trial, the defendants appealed to this court.

*Amasa J. Parker,* for defendants, appellants.

*Lyman Tremain,* for plaintiffs, respondents.

HOGEBOOM, J.—The nonsuit was properly refused irrespective of the question whether the limitation applicable to the case was twenty or twenty-five years. To make the limitation applicable at all on such a motion, there must have been evidence of adverse possession, and that evidence must have been substantially uncontroverted or so greatly preponderant as to over · throw a verdict rendered in opposition to it. To justify the defense of adverse possession, the possession must appear to have not only been adverse, but continually and uninterruptedly so. Colvin *v.* Burnet, 17 *Wend.* 564; Brandt *v.* Ogden, 1 *Johns.* 156. There was much evidence to show by the declarations of Lambert, that it was not of that character, but was

consistent with the plaintiffs' title. This evidence was proper at least to characterize the possession, if not to control the title.

There was also evidence of the defendants' own admission of a similar character. It was, therefore, a proper matter for the jury to determine; and this furnishes an effectual answer to the motion for a nonsuit. Pitts *v.* Wilder, 1 *N. Y.* 525; Hunter *v.* Trustees of Sandy Hill, 6 *Hill,* 407.

I think, however, one or more copies of the will of Lambert, the patentee, were erroneously rejected. By that will three hundred acres of land (which there was evidence to show included the premises in question) were given to his grandson Lambert Sternbergh, under whom the defendants claim.

This will, if it had been produced, would have been admissible without proof, as an ancient paper. It was regular upon its face; that is, apparently executed with legal formalities. It bore date January 7, 1765; the testator died in the same year; it was "an old, ancient paper from its looks; it was rolled up; the paper was coarse; looked as if it had been folded; it was worn; ink and all looked old; coarse handwriting." It was found among the descendants of the testator, in the possession of a family whose ancestor was an executor named in the will; referred to names and places consistent with the other testimony in the case; was handed down in the family, according to the family tradition, from the executor himself, he being also a devisee in the will; and there was evidence to show claim of title and actual possession, corresponding with the provisions of the will.

If this last particular, possession in accordance with the will, is sustained by the evidence, as I think it clearly is,—for the possession of the defendants themselves, in addition to that of other parties, may be said to be of that character,—then according to all the authorities, it would have been admissible without proof of execution. Jackson *v.* Laroway, 3 *Johns. Cas.* 283; Jackson *v.* Christman, 4 *Wend.* 277.

But it never was absolutely indispensable that possession, in strict accordance with the terms of the instrument, should be shown, to entitle the paper to admission as an ancient paper. If it were so, many a title would be destroyed. Nor is it possible to trace possession back beyond the knowledge of living

men, except by tradition or hearsay, or by the intrinsic proba-
bilities of the case, and the consistency of existing facts with
such prior possession. Mere efflux of time will not make it
admissible without proof. But aside from this, any circum-
stances which go to confirm the genuineness or authenticity of
the document, make it admissible in evidence. It "must be.
corroborated by possession or *other circumstances.*" Jackson *v.*
Luquere, 5 *Cow.* 221; Jackson *v.* Laroway, 3 *Johns. Cas.* 283;
Staring *v.* Bowen, 6 *Barb.* 109, 114, 115.

A deed appearing to be of the age of thirty years may be.
given in evidence without proof of execution or possession, if
such account of it be given as may, under the circumstances, be
reasonably expected, and will afford the presumption that it is
genuine. 3 *Johns. Cas.* 283; Hewlett *v.* Cook, 7 *Wend.* 371,
disapproving dictum of .KENT, J., in Jackson *v.* Blansham, 3
*Johns.* 298; see also Bogardus *v.* Trinity Church, 4 *Sandf. Ch.*
633; *Greenl. on Ev.* § 114, note 3.

It is said that there was no evidence that the will, or any of.
the copies, were thirty years old. This is an entire mistake.
The paper itself, if an original (and to some extent also if a
copy), bearing upon its face the marks of age and authenticity,
contains intrinsic evidence of the time of its execution, more or.
less strong, according to circumstances.

The date of the paper, if resembling the residue of its con-
tents, and not appearing to be altered or interpolated, or other-.
wise spurious, is of itself a circumstance of some strength to
show the period of its execution, inasmuch as a suspicion of its
genuineness is not to be unreasonably indulged. But in this
case there was positive evidence of its antiquity. A deed of
Adam Sternbergh (crazy Adam), introduced in evidence, and not
disputed to have been executed in 1785, and recorded as early
as 1786, contains an extract from this will and refers to it by its.
date, showing, of course, its existence at a prior period. One
of the copies is proved to have been in the handwriting of.
Harmanus Bouck, a lawyer, who died in 1831 or 1832, twenty-
five or twenty-six years before the trial, and was out of practice
some years before his death; another copy, made from the last
by General Gebhard, purports to have been made on December.
27, 1829. Still another copy, an exact copy, and the most im-

Enders *v.* Sternbergh.

portant of all, was made by Caleb Carpenter from the original, between the time it went into his possession, nineteen years before the trial, and seven or eight years afterward, while it was in his possession. This witness (and his wife corroborates him) describes the original will itself, and gives such particulars of its appearance and apparent genuineness as, I think, clearly entitle it to be used in evidence if its contents could be shown. I know of no rule of law which absolutely requires the evidences of genuineness and authenticity to be determined by *inspection* before a court and jury, instead of *competent proof* from persons who had seen it—its non-production being sufficiently accounted for.

If then the paper itself, if produced, would be admissible, is not evidence of its contents admissible in case it be lost or destroyed? I am not aware of any exception to the rule except this, that if the paper be purposely destroyed by a party having an interest in its contents, he shall not be permitted to substitute secondary evidence, because the willful destruction of the more reliable witness tends to throw suspicion upon the verity and authenticity of the inferior evidence. Riggs *v.* Tayloe, 9 *Wheat.* 483 ; Blade *v.* Noland, 12 *Wend.* 173 ; 2 *Cow. & H. Notes,* 1206.

Further than this, I am not aware that the rule has ever been carried. Innocent parties should not suffer from the indiscretion or wickedness of others with whom they have no connection, and of whose acts they have no knowledge. I do not discover anything tending to cast suspicion on the defendants as having been in any way connected with, or cognizant of the destruction of this paper. The established rule, therefore, applies that the next best evidence is to be admitted. Fetherly *v.* Waggoner, 11 *Wend.* 599.

The secondary evidence, if in its nature admissible, was of the most satisfactory character. It was in writing, and sworn to be an exact copy. A second copy, differing, however, in the name of one of the subscribing witnesses, was also produced ; but whether copied from the original, does not appear. A third copy, which, though copied from the last preceding copy, was in all respects like the first copy, was also produced.

These were all alike, except in the single particular above

mentioned, and coincide also in point of date and contents with the extract from the will contained in the deed of crazy Adam, of 1785.

The first being proved to have been taken from the original, was entitled to very high consideration as evidence, and, as it seems to me, was clearly admissible. I think it is no sufficient answer to this to say this is dangerous evidence. Like all secondary evidence, it is not equally satisfactory or safe with that of the original paper; but it would invade a perfectly well settled rule of law, and in many cases operate most oppressively, to withdraw it entirely from the consideration of the jury.

Nor do I think we are authorized to say that the exclusion of this evidence was not injurious to the defendants. How can we know this? and what is the legitimate inference, when the foundation stone of one of two distinct defenses is thus abruptly removed? To say that the defendants have another equally strong defense, if either were available, is to make an assumption which the jury, it is quite possible, were not prepared to sanction. The other defense was founded upon the deed of crazy Adam. It may be that they concluded that a deed from crazy Adam did not confer a title altogether sound, especially as one of the witnesses testified that one of the defendants informed him that crazy Adam was not considered competent to transact business. Further, the will and the deed support and corroborate each other in regard to the defense founded on the deed. There being evidence to show there *was a will*, it was proper, if not necessary, that that will should be produced, and being produced and claimed to confer only an estate for life, the two together concur to give character and strength to the title set up under them on the part of the defendant. Besides, this case comes up on exceptions, and it is nearly a universal rule, that material evidence erreneously admitted, or excluded upon exception, requires a new trial, and that we are not permitted to speculate upon the probable effect of the error upon the final result.* Dresser *v.* Ainsworth, 9 *Barb.* 619; Worrall *v.* Parmelee, 1 *N. Y.* 519.

---

* Compare, however, People *v.* Gonzalez, 35 *N. Y.* 49; Vandevoort *v.* Gould, 36 *Id.* 639.

It does not belong to the judge at the trial to reject one of two good defenses which the party may offer, especially when he does not put his decision on any such ground, nor indicate to the jury his opinion on the other branch of the case. The party has a right to take his chances before the jury on both, and it is dangerous for a court of review to indulge in conjectures as to the probable non-prejudice to a party of the exclusion of an instrument of evidence vital to one branch of his defense. There would be more plausibility in this aspect of the case if we could see that the judge at the trial had distinctly charged that the defendants, if entitled to succeed at all, were entitled to a verdict of the jury under the deed from crazy Adam.

Again, the will seems to have been an important item of evidence to rebut the presumption of a deed relied on by the judge in his charge, from Lambert to Adam. This was material evidence on that point.

I think further, that if the exclusion of the will at the trial was upon the ground (as it manifestly was not) that the defendant had another substantial ground of defense, such ground should have been (as it was not) stated by counsel and sustained by the judge as a legitimate objection to the testimony. The parties then could have distinctly taken their exception to such a ruling and distinctly prepared themselves for other grounds of defense.

Again : it is said that the rejection of this evidence was of no moment for the further reason that the will, omitting words of inheritance, gave only a life estate to Lambert 2nd, waiving the question whether the will conferred a fee or life estate only on Lambert 2nd (which is not without embarrassment, for the will purports to dispose of all the testator's *temporal estate,* and there is no residuary clause giving the remainder of his estate to any other person). I think it cannot be said this evidence was unimportant, for the following reasons :

1. If it showed a *life estate* in Lambert 2nd, it was proper to show that fact as *introductory* to and in *connection* with other evidence on which a complete defense was to rest. Thus it was competent to show it in connection with the deed from crazy Adam ; which evidence it corroborated and supported.

2. It tended to show *title out of Adam,* the son of the testa-

tor on whom (Adam) the plaintiffs relied as the source of their own title. Adam died before his father, Lambert, and if Lambert was seized, and died in possession of the premises, of which there was much, not to say conclusive evidence, proof of Lambert's will, carrying away the estate from Adam, and, of course, from his devisees, would be a very material link in the chain of defendants' evidence, and whether it showed an estate in fee in Lambert 2nd, was not so material as that it showed title out of the plaintiffs.

If Lambert 1st died in possession owning the premises, then the only way in which the plaintiffs could claim would be as his heirs at law. But defendant Adam (as well as numerous other persons) was, also (in such case), his heir at law, and the parties would be tenants in common, and the plaintiffs would not be entitled to recover at all without showing an ouster by their co-tenants, which would not be presumed; and if they did recover they would be entitled to only a fractional proportion of the premises, instead of the entire tract which they in fact recovered at the trial. Moreover, I think so narrow, and far from obvious a ground for the exclusion of apparently proper evidence, should have been mentioned at the trial, to the end that the party ruled against might have had an opportunity to obviate the objection by other evidence.

Again, it is now urged, but without ever having been suggested on the trial, that this will neither devises nor assumes to devise the premises in question. I should be strongly inclined to adopt the contrary view, that it was assumed at the trial, and therefore must be taken for granted here, that it did not dispose of the premises in question. I am aware that there is proof in the case tending to show that one of the defendants admitted that the crazy Adam deed (which related to the same premises as did the will) " was of no use against the Enders, *because it related to the woodland* " (a different tract) ; but there is, on the other hand, much evidence tending to show that it *did* relate to the premises in controversy, and it was, therefore, a question to be submitted to the jury. The witnesses (several of them) show that the premises in controversy are lot No. 110 in Morris and Coyeman's patent (the woodland lying in the Sternbergh patent), and several others testify that the mother

of Lambert 2nd (the devisee) lived on the farm in question, which satisfies the words of the devise, which are : "I give unto my grandson, Lambert Sternbergh, three hundred acres of land, *which his mother now has in possession,* or two lots." There can be no question that there was enough, at all events, in favor of the defendants' location of this tract to draw the question to the jury. In any aspect in which I am able to consider it, I am of opinion that one or more copies of the will were erroneously rejected.

I am not satisfied with that part of the charge which authorized the jury, in case Lambert 1st, the father of the testator, Adam, was originally the owner of the premises in question, to presume a conveyance from Lambert 1st to Adam, if they were satisfied from the evidence, that such conveyance had been made. There would seem to be a saving clause to the otherwise positive direction or authority of the court in the phraseology at the end of this sentence, but when we come to consider, as the case states, that "all the evidence upon which said charge was founded is set forth in the bill of exceptions," and on examining that evidence find no proof of any such conveyance, nor any tending to prove that one had been made, I think the remarks of the judge are exceptionable, and well calculated to mislead the jury. The judge had already told the jury, in effect, that the death of Adam in possession implied title in him at his death, because he had said that the will of Adam, if he died in possession, *prima facie,* gave title to the plaintiffs, which I think was as far as he was authorized to go. To encourage the jury to go further, and presume, in the absence of evidence and against evidence, a conveyance from the father to the son, when it was a disputed question before them whether the father or the son was in possession, and there was much evidence tending to show that the father was, at the time of his death, one year after the son's death, and the father had made a will (or there was evidence tending to show that he had), disposing of the property in question, was but stimulating them to indulge in the loosest presumptions;—in the first place, to presume title in fee in Adam, from the fact of possession at his death; and, if he was not in possession, to presume a conveyance from his father to Adam in order that Adam's

will might take effect. The rule on the subject is carefully and, I think, well stated by Chief Justice TINDAL in Doe *v.* Cooke, 6 *Bingh.* 174, 179: "No case can be put in which any presumption has been made, except when a title has been shown by the party who calls for the presumption, good in substance, but wanting some essential matter necessary to make it complete in point of form. In such case, when the possession is shown to have been consistent with the fact directed to be presumed, and in such case only, has it ever been allowed."

There are subordinate questions in the case, which I do not deem it necessary to examine, and if I am right in the conclusion thus far arrived at, they are wholly unimportant to be considered.

I think the judgment of the supreme court was erroneous, and should be reversed; and that a new trial should be granted, with costs to abide the event.

DENIO, Ch. J.—I am of opinion that, upon the evidence which was given respecting the will, of which a copy was offered in evidence, and upon the proof which was proposed to be given and was rejected, the copy should have been received. I do not perceive why, upon principle, secondary evidence may not be given of a document which has been accidentally lost or destroyed, without the fault of the party offering it, although such document was one which, from age or other circumstances, proved itself, instead of being authenticated by ordinary proof of its execution. The law regards an ancient deed or will which has been kept in the proper custody, and where the possession and enjoyment of the property devised or conveyed has corresponded with the dispositions of the instrument, as *prima facie* an authentic document. So far as its consistency as a piece of evidence is concerned, it stands on the same footing as an instrument duly proved or acknowledged. If a paper, the execution of which can be proved, is lost or destroyed, a party interested under it may, from the necessity of the case, prove what it contained, and avail himself of it as though it had been produced. But if, instead of being capable of proof, by bringing witnesses to its execution, it be shown to be a paper which, under the circumstances appearing in evi-

dence, proved itself, and did not require the production of witnesses to its execution, the reason for admitting secondary evidence of its contents would appear to be equally strong as in the other case. So far as the evidence of antiquity arising from the appearance of the paper is material, the party would have to supply it by oral testimony from one who had seen it. No doubt it would be more satisfactory to have the paper to produce before the court and jury, but where this cannot be done, the same principle of necessity which admits secondary evidence of its contents, would allow proof of its general appearance, and of the marks of antiquity which were apparent upon it.

To show the reasonableness of this position, suppose an ancient deed or will to have existed down to a very late period antecedent to the trial, and to be accompanied with all the circumstances required to admit its reception without proof of its execution, and then that it was accidentally burned up. No one, I think, would claim that the party interested under it would forfeit his rights by being precluded from giving secondary evidence of its contents.

The evidence to bring this will within the rule was in my opinion sufficient. It purported to have been duly executed and attested; it was found in the hands of a descendant of the testator, who was also a descendant of one of the executors; it was, therefore, found in proper custody. The paper was about eighty years old when it was destroyed, and it had all the appearance of age which a paper which had existed so long would be expected to have. The premises in controversy had been held in consistency with its dispositions. Lambert Sternbergh, the grandson of the testator, to whom it was devised, entered into possession of it as soon as he came of age, previous to which his mother, who was his natural guardian, and her husband, had been in possession. This is precisely what would have happened if the will were a genuine paper. The alleged will also devised land to all the testator's children, and among them to his son Abraham, and a daughter of this Abraham was examined by the defendants, who offered to prove by her that her father acquired real estate under the will of his father, the testator, in the alleged will; but this was rejected. In testing the question we must consider that the offered evidence would

have been given had it been allowed. In addition to this, a very explicit act recognizing the will as an authentic one was shown by the production of the deed from Adam Sternbergh, to Lambert, the grandson of the testator. This deed was executed seventy-two years before the trial and only about twenty years after the date of the alleged will, when the disposition which the testator had made of his property must have been known and remembered among his numerous family. Both parties to it were the descendants of the testator, and the grantee a devisee under the alleged will, the grantor being his grandson and his heir at law, and the grantee also a grandson and the devisee of the premises in controversy. The deed refers to the will accurately by its date, and it moreover recites one of the disposing clauses in *hæc verba.* This proof, taken together, appears to me to have been quite sufficient to warrant the reception of the will in evidence as an ancient will within all the cases. The evidence of its destruction and of the accuracy of the copy offered in evidence was entirely satisfactory. It follows that the ruling, by which it was excluded when offered, was erroneous.

It is a much more difficult question whether, considering the course which the trial subsequently took, the error was at all material. The deed from Adam Sternbergh, the grandson of the testator and his heir at law, to another grandson, Lambert Sternbergh, under which the defendants claim title, to which I have just referred for another purpose, was sufficient to carry to the grantee the title to the premises, on the assumption that Lambert (the elder) died intestate as to his property, either wholly or in respect to the reversion expectant on the death of Lambert, the grandson. Hence, it is urged, with some reason, that if Lambert Sternbergh (the elder) died seized of the premises, the defendants made out a title to them under the deed of his heir at law, and thus the existence of the will became of no direct importance. If there had been any question of fact to submit to the jury respecting the deed, it could have been answered that the defendant should have been permitted to show both branches of his title; but upon the facts proved there was no such question. There was no answer to the defendants' title under the deed, provided the elder-Lambert Sternbergh

died seized, and if he did not, the will could have no operation.

The plaintiffs claim under the will of Adam Sternbergh, one of the sons of Lambert (the elder), executed in 1763. He, Adam, died the next year, and his father survived him, and died in 1765; having made his will, according to my view of the evidence, in January of that year. The will of Adam, in its general terms, embraced the premises, provided the testator was entitled to devise them, and under that will the ancestresses of the plaintiffs took a vested remainder subject to the life estate devised to Lambert, his son. The real question in the case, therefore, was, whether Adam was seized of the premises at the date of the will and at his death. If he was, the plaintiffs' title was complete, but otherwise they had no pretense of title. No paper title in him was attempted to be shown. But possession of a person with a claim of ownership is *prima facie* evidence of title, and possession alone, without anything to qualify it, would be presumptive evidence of title. After such a length of time no living witness can speak as to the fact of possession of his own knowledge, and I think there is no rule admitting hearsay upon such a question.*

The premises in question appear to be embraced in two deeds, executed respectively by Philip Schuyler and others, and by Cornelia Schuyler and others, to Lambert Sternbergh, the elder, in 1754, eleven years before the death of the grantee. The title is not traced further back, nor is there any direct evidence that the grantee entered under the conveyances. If the copy of his will had been admitted, an authentic assertion of ownership on his part would have been shown, within about ten years from the execution of the deeds to him. The lands in question, among others, were specifically devised by that will to his grandson Lambert. It is unimportant to consider whether the want of technical words of inheritance would have limited the devise to an estate for life, because if the elder Lambert was the owner at the time of his death, the plaintiffs would have taken nothing upon his intestacy as to the reversion. There is no competent evidence that Adam, the son of Lambert

---

* On this compare the further decision, p. 52 and p. 53 of this vol.

1st, ever had possession of the premises. It is, however, probable; for his widow, after his death, and at the time of the death of the wife of his father, was in possession, as appears by the will itself. But this same evidence, which shows her to have been in possession at that early period, also shows, argumentatively, that the possession was in subordination to the title of her husband's father; but in the same instrument he disposes of it to her son, the second Lambert; which he would have no right to do if her husband had died seized.

There was much evidence of the declarations of Lambert 2nd, as to his title to the premises. He undoubtedly often admitted in substance that he held under the will of his father, which gave him only an estate for life, with remainder to his sisters, under which the plaintiffs claim; but he also sometimes claimed that his father did not own the land, and that *he* held it under the will of his grandfather. The declarations of Adam, the defendant, and his desire, and that of his sons, the other defendants, to conceal the will of the elder Adam, were entitled to little weight, as neither he nor they could have known anything respecting the source of title of Lambert 2nd. The will of the elder Adam is not in any respect hostile to that of his father, the first Lambert. It does not devise the premises in question specifically, although it embraced them if he owned them. If he did not own these premises, it took effect only upon his other lands; and it is clear that he was seized of other real estate, probably in large quantities, as he was or had been joint patentee with his father of three thousand acres in the Sternbergh patent. The will of the first Lambert is an assertion of dominion over the particular premises in question, and the will of his son Adam is not hostile to that assertion, as the devise is general, and, in effect, residuary, and does not assert a right to dispose of these or of any particular lands. These remarks are not made with a view of examining the verdict of the jury, but in order to test the materiality of the evidence excluded, and to try the correctness of the charge.

As an historical problem, I should consider the probability to be that Adam was in possession of the premises without title, but with the permission of his father, and that the latter, after his son had died before him, elected to devise the prem-

ises to the only son of his deceased son. I am inclined to the opinion that the excluded will was competent upon the question of ownership or seizin between this father and son, considering the obscurity of the other evidence and the great length of time which had elapsed   It was a strong assertion of ownership, and should have been considered in connection with the other proof.  I think that part of the charge of the judge was erroneous in which he instructed the jury that if Lambert, the father of the testator Adam, was originally the owner of the premises in question, the jury might presume a conveyance from Lambert to Adam, if they were satisfied from the evidence that such conveyance had been made.  There was no evidence that Adam possessed the premises for any considerable length of time before his death, if he was in possession at all.  After his death and the death of his father, which soon followed, possession of his widow and of her second husband was as consistent with the suggestion that the land had always belonged to Lambert, the father, as that he had conveyed it to his son. There was then really but a short possession, if any, upon which to base the presumption.  To presume a deed under such circumstances would be mere conjecture, not warranted by any principle of law.

I am in favor of reversing the judgment and granting a new trial, for the error in excluding the copy of the will and for the error which I have pointed out in the charge.

All the judges except DAVIES and WRIGHT, JJ., concurred.

Judgment reversed, and new trial ordered, costs to abide event.

---

*Second appeal: March,* 1869.

On the second trial the will of Lambert 1st was admitted in evidence.  At the close of the testimony, the details of which are stated in the following opinions, defendant requested the court to decide that as the case stood the title was in Lambert 2nd, and that there was no proof that Adam ever had any title, and so direct a verdict for the defendants.

A verdict for the defendants was directed, in accordance with

this request, and the judgment thereon was affirmed by the court at general term; that court being of opinion that there was no positive evidence that Adam Sternbergh ever was in actual possession, for no living witness testified to that fact, and plaintiffs' case, so far as it established possession, rested entirely upon the parol declarations of Lambert 2nd, while in possession, tending to show that he had a life estate, and that his father was in possession while living, and on defendants' similar declarations, and some trifling hearsay evidence; that confessions are to be regarded with caution, and that these were not sufficient to establish that Adam Sternbergh was in possession as owner, or that plaintiffs had title; and this conclusion was thought to be supported by the latter part of the opinion of DENIO, Ch. J., above reported. The opinion of the supreme court is in 52 *Barb.* 222. From this decision plaintiffs appealed.

*Lyman Tremain,* for plaintiffs, appellants.

*Amasa J. Parker,* for defendants, respondents.

BY THE COURT.—HUNT, Ch. J.—Adam Sternbergh died in 1764, leaving three children, a son Lambert, a daughter Catharine, a daughter Elizabeth. These daughters married respectively William Enders and Jacob Enders. The plaintiffs are the descendants of these daughters. The defendants are descendants of the son Lambert. The plaintiffs claim that Adam Sternbergh was the owner and was in the actual occupation and possession of the premises in question for some years prior to his death, which occurred in 1764, and so continued until his death. They claim that Adam made a will by which he devised the use of these premises to his widow until Lambert should reach the age of twenty-one, then to Lambert for his life, after his death to his two daughters Catharine and Elizabeth in fee.

The defendants claim that Adam never was the owner of the farm, but that it belonged to his father Lambert 1st, that it was given by his will to Lambert 2nd, and that this title was confirmed by a deed from Lambert 2nd to Adam, the first-born son of Jacob, the first-born son of Lambert 1st. The premises

are sixty acres in the Morris and Coeyman's patent, and are usually termed " The Flats." The judge directed a verdict for the defendants, on the ground that there was no proof that Adam ever had title, refusing the request of the plaintiffs to go to the jury on this question. If there was error in this respect a new trial must be ordered.

The inquiry on this branch of the case, is whether the plaintiffs produced evidence which established a title in Adam S., either *prima facie* or conclusive; that is, enough to entitle them to go to the jury on the point. The first witness, Maria Brownell, testified that she was a granddaughter of Lambert 2nd, that she lived and was brought up on his homestead farm, the premises in question, until her twenty-fifth year, that Lambert died in 1829, and occupied the farm until his death. She further testified that Lambert told her that he held the land under the will of his father Adam, that all the title he had was under that will, and that on his death the title would go to Catharine and Elizabeth; and that he then produced and showed to her his father's will, which was the one produced in court. That will was dated and executed October 17, 1763, and provided among other things that his wife Sophia should hold and possess all his lands and tenements for her own use, until Lambert should come to the age of twenty-one years. He then gave to Lambert all his real estate except his wood lot, during his natural life, and after Lambert's decease, " then to befall to my two daughters Catharine and Elizabeth, their heirs and assigns forever."

To each of said daughters was also given the sum of eighty pounds to be paid by Lambert. This witness further testifies that Lambert said that his sisters Catharine and Elizabeth would have the property on his death in case they got the will. The evidence of the declarations of Lambert was objected to in due season.

Henry Loucks testified to declarations of Lambert to the same purport, and testified that the buildings were on the Morris and Coeyman's patent.

Jacob Becker proved that after Adam's death his widow married one Dominick, that they resided there upon the farm until Lambert became of age, and that Dominick had to leave

4

after Lambert became of age. He also proved that Adam S. was reputed to be a large landholder. This evidence of Becker was received without objection.

Amy Underwood also gave evidence (under objection) of a declaration of Lambert some thirty-six years before the trial, to the effect that the property belonged to his sisters after his death.

Alvah Brownell testifies to various devices among the defendants to conceal the knowledge of Adam's will, that the will was delivered and was kept by him some time for that purpose. He also testifies that he examined the old papers of the defendant Adam (son of Lambert 2nd), and found among them a receipt given by one of Lambert's sisters, or her husband, for the legacy of eighty pounds, left by the old will of Adam Sternbergh. The evidence of this witness was given and received without objection.

Jacob Stoner testified without objection, that he had heard Adam, one of the defendants, say, that the Enderses claimed the farm he resided on, after the death of his father Lambert; that Adam said that William A. Enders said to him, Adam, that if he would help him out of debt, he would sign off his right to the farm he lived on and never call on him for it again. He also testified without objection, that he heard Lambert say that his, Lambert's, father lived and died on the premises on which he, Lambert, was then living, and that his mother afterward married John Dominick for her second husband.

Alvah Brownell being again examined, testified to the particulars of the papers of Lambert that he had found upon the examination referred to by him. He further stated that the defendant Adam had said to him that his grandfather Adam had died seized and possessed of the premises, on which Adam, the defendant, then lived, and that if the Enderses got hold of the old will he would be ruined; that Adam was aware of the contents of the old will and took measures to prevent Mr. Gebhard from giving information to the Enderses respecting it. This evidence was given without objection.

Catharine B. Gay testified that Lambert 2nd was her great-uncle, and that on the occasion of a visit to him she expressed her sorrow at his sickness, to which he replied "that I must

not be sorry for him, as he was an old man and at his death my father would be made rich and wealthy." "He also stated that there was a will in a chest in the room, to which he pointed, 'that will make my father's family rich after his death, &c. ; that my father would be able to return and live happy here, &c., and that this farm comes to the Enders family after his death, by the will."

This evidence was given without objection. Theodore Barton and Samuel B. Stephens, Wm. Enders and Wm. Goeter gave similar testimony. A letter from one of the defendants to Alvah Brownell was given in evidence entreating him not to allow the Enders party to have his testimony.

A patent from the State to Lambert and Adam Sternbergh, dated 1754, conveying three thousand acres of land, was given in evidence by the plaintiffs. The plaintiffs gave further evidence and rested.

Whereupon the defendants moved for a nonsuit on the ground that no title was proved in Adam, the testator, which was refused, and they then gave evidence on their own part.

They gave in evidence certain ancient deeds from Philip Schuyler to Lambert Sternbergh, dated July, 1754, and from Cornelia Schuyler to the same, dated June, 1765, to which various objections were made; also a deed from John Dominick and Sophia, his wife, to Lambert, dated December, 1790, reciting that they were possessed of three certain lots, 11, 12 and 13, in the three thousand acre tract, granted to Lambert and Adam in 1754, and making partition of 12, 13 and a small piece off the southerly end of lot 11, and a small piece of lot 10 to Lambert. (The premises in question are lot 110, the northerly end of which buts against the southerly end of lots 10 and 11.)

The will of Lambert, the patentee, was proved by copy as a lost or destroyed document, in which, among other things, he gave to his grandson Lambert, " three hundred acres of land, which his mother now has in possession, or two lots." Also, " to Abraham and David, this farm on which I now dwell, but Nicholas must have the third part of the land over the creek and his new dwelling place."

Francis Dominick was sworn for the defendants, and testi-

fied that he was the son of John and Sophia Dominick, and that his mother was the widow of Adam Sternbergh, and that he was half brother to Lambert 2nd; and that as soon as Lambert became of age his father and mother had to leave the farm, and that Lambert remained there until he died. He further testified that Lambert told him the property belonged to him; that there were two wills made, and that the last one gave it to him. This evidence was objected to by the plaintiffs' counsel.

Lewis Roach testified to the declarations of Lambert that he owned the farm, and that he got it from his grandfather. The same thing was shown by George Cook, Abram Ackerman and Adam Sternbergh, by whom, also, evidence was given showing the relative situation of the lots in the different patents with reference to each other. The defendants closed their case.

Plaintiffs then gave evidence tending to show that the Albany [or Schuyler] deeds were obtained many years after the death of Lambert, the grantee in the same, and that they were fraudulently obtained through a person having access to the papers of Mr. Bleecker.

The defendants then asked the court to decide that the title was in Lambert; that there was no proof that Adam ever had title; and to direct a verdict for the defendants.

The court acceded to this request, and did so order and direct, to which the plaintiffs excepted. The plaintiffs' asked that the case be submitted to the jury, which was declined; also, severally, that the question as to the Schuyler deeds, and the will of Lambert Sternbergh, also as to whether the devise therein covers the premises in question; and also as to whether Adam Sternbergh died seized of the lands, and certain other questions, should be submitted to the jury. Each of these requests was denied by the court.

I have examined the opinions rendered in this case, when in this court on the former argument, and find that the decision determined only the questions relating to the admission of the will of Lambertus, the patentee.*

The judgment at the circuit, on the trial which we are now

* Above, pp. 35 and 42.

considering, was affirmed at the general term, on the ground that the plaintiffs had failed to show title in Adam Sternbergh. I agree that the plaintiffs' right of recovery rests upon the ownership of Adam Sternbergh. Was there evidence on which the jury would have been justified in finding that Adam was the owner of the premises?

Lambert's own declarations while in possession of the premises were proved on this subject. I have already quoted some of them.

The defendants claimed under him as his heirs and devisees. They had no title except as derived from him. His declarations were evidence against them. Pitts *v.* Wilder, 1 *N. Y.* 525; Hunter *v.* Trustees of Sandy Hill, 6 *Hill*, 407; Spaulding *v.* Hallenbeck, 35 *N. Y.* 204; 1 *Greenl. on Ev.* §§ 108, 109, 189.

I have cited the evidence that Lambert declared that all the title he had to this property was under the will of his father, and that it would belong to the Enders family at his death.

It was proved by Dominick that his mother and stepfather occupied the farm until Lambert became of age; that when he became of age they and their family were compelled to leave the property, and that he, Lambert, entered into its possession, and so continued until his death. This is in precise accordance with the terms of Adam's will, and is strong evidence that all parties then recognized Adam's ownership and the validity of his will, and acted under its provisions. It carries strong weight upon the proposition that Adam's ownership and authority to devise were then admitted by all, as well those injured as those benefited by its terms. Lambert stated in express terms to Mr. Brownell, that his father, Adam, died seized and possessed of these premises; this was *prima facie* evidence of seizin. Jackson *v.* Waltermire, 5 *Cow.* 299; Embree *v.* Ellis, 2 *Johns.* 119, 123.

The defendants themselves, from time to time, made similar admissions as to Adam's ownership and the source of their title.

It is quite true that Lambert is proven to have made different statements at other times, and that the defendants endeavored to avoid the effects of their admissions. I do not stop to consider whether such declarations are competent. Assum-

ing them to have been competent, they raised a question for the jury, but gave no power to the court to disregard those of the opposite character. The case should have been submitted to the jury upon this point. Especially should this view be taken, when we recollect that there were then no such laws or facilities for recording titles as we possess now.

Again : how was this proof of title derived from the seizin of Adam and the holding of Lambert under this will disposed of ? Chiefly, I judge, by the effects of the deeds from Schuyler. I do not assume to pass upon their effect. It is safe, however, to say that there was evidence on which the jury might have found that they were not delivered until many years after the death of the grantee named in the same; and that they were surreptitiously obtained from the office of Mr. Bleecker. I by no means intend to say that the jury would or should have so found ; simply, that there was evidence which would have justi- fied such finding, and that the question should have been sub- ·mitted to them. If so held, their effect would have been en- tirely destroyed. There is no evidence, that I can discover, that the grantors in those deeds were either the owners or ever had been in possession of the premises described in those deeds. Adam being in possession, could not have been ejected upon such evidence of title. Gardner *v.* Heart, 1 *N. Y.* 528.

Again : effect is attributed, in favor of the defendants, to the will of Lambert 1st, and the deed of his grandson Adam, son of Jacob, confirming the same. Assuming that Lambert had title, great effect might well have been given to the claim un- der his will. So, as there was doubt about the quantity of es- tate to pass under the will, by reason of the absence of words of inheritance, it was quite proper that the deed from Adam, the grandson of Lambert the 1st, to Lambert, should be introduced. If Lambert was the owner, and the fee did not pass by the de- vise, it descended to his eldest son Jacob, and thence to Jacob's ·eldest son Adam. All this, however, depended upon the ques- tion whether Lambert himself had the title.

Again : the land described in the will of Lambert 1st, was by words of general description, " three hundred acres of land which his mother now has in possession, or two lots." He had in the previous paragraph twice used the word " dwelling place " in

reference to other pieces of land. Did he intend here to use a new word for the same idea, or did he mean in possession but not occupied as a dwelling place?

Again: as a legal proposition how was this three hundred acres, thus described, to be located? The defendants say that it covered the sixty acres in Morris and Coeyman's patent. The plaintiffs say that it meant to describe land on the hill, in the Sternbergh patent, which ·Lambert 1st and his son Adam owned together. For this view they claim to find confirmation in the releases executed after the death of Lambert 1st between the different members of the family, and in the fact that the number of acres cannot be correctly made out in the Coeyman's patent and adjoining. It was also proved that on two several occasions, the defendant Adam stated that this description related to the low land only and did not include the premises in dispute. This location was a pure question of fact, which should have been submitted to the jury. It should not be forgotten, also, that Lambert 2nd, who finally made the claim of title under the will of Lambert 1st (as do the present defendants), did, at one time, claim under a second will from his father as well as upon the one now in evidence. He placed his title at one time upon the will of his father, as it now appears giving him a life estate only,—at another time upon a second will, which gave him the absolute title,—at another upon the title obtained from his grandfather. These contradictory claims were proper for the consideration of the jury in seeking to determine the true ownership of the premises in dispute.

I think a new trial should be ordered. Costs to abide the event.

LOTT, J., delivered the following opinion.—The action was brought to recover the possession of two tracts of land lying in Schoharie county, one of them in the Sternbergh patent, containing one hundred and six acres of land, and the other in Morris and Coeyman's patent, containing about sixty acres.

The issues therein were tried by Justice INGALLS and a jury, and he, on the closing of the testimony, directed a verdict for the defendants, and the case comes before us on an appeal from

the judgment of the general term in the third judicial district sustaining that direction (52 *Barb.* 222, Justice HOGEBOOM dissenting), and an accurate statement of the material facts, so far as they are undisputed, and a careful analysis of the evidence bearing on the matter in dispute, are contained in his dissenting opinion.*

A careful examination of the testimony has brought me to the same conclusion he arrived at.

It appears that Adam Sternbergh, under whom the plaintiffs claim title, and his father, Lambert, owned a tract of woodland in the Sternbergh patent, and he, by his will, dated October 18, 1763, directed his wife Sophia to sell his right therein, and to receive the money for the same to her own use forever, and he gave all the residue of his real estate to her, until his son Lambert (called Lambert 2nd in the case) attained the age of twenty-one years, and then to him during his natural life, and after his decease to his two daughters Catharine and Elizabeth (who were the ancestors of the plaintiff in this action) in fee. The testator died on August 12, 1764, aged 38 years. No deed or grant to him of any real estate, other than the woodland, is shown, and there is no positive or direct proof that he was in possession of any. He was, however, reputed to be a large landholder, and a patentee in other patents, and his widow Sophia, shortly after his death (as early as January 7, 1765, the date of his father's will hereinafter mentioned), occupied the premises in question, and continued in the occupation thereof until Lambert 2nd, his son, became of age, who then entered and continued in possession until his death, in 1829. He, while in possession, frequently stated in substance that he held it for life under his father's will, and that upon his death his sisters Catharine and Elizabeth would have the property.

There was also evidence showing an admission by the said Lambert 2nd, " that his, Lamberts', father lived and died on the premises on which he said he, the said Lambert, was then living," and one of the witnesses says that Sternbergh (a son of Lambert 2nd), one of the defendants, told him, in 1846 or 1847, on being asked " whether there were not any old deeds among

---

* That opinion is not reported in 52 *Barb.*

his or his father's old papers showing that the property had been devised by Adam Sternbergh, Sen., the grandfather of Adam Sternbergh, defendant, that it would be well enough to look them over and see, but he was sure there were none of his grandfather's deeds among them, for his, defendant's, father, Lambert, had always told him that he had put them out of the way or destroyed them," and that same witness testifies that he had been told by the said Adam Sternbergh, defendant, "that his grandfather Adam died seized and possessed of the premises on which Adam, defendant, then lived."

Another witness stated that the said defendant, Adam Sternbergh, on being asked if there were any other papers than the said will by which he held the property, replied "that his father had said there had been other papers to show that his grandfather, Adam Sternbergh, owned the flats, but they were destroyed."

The property above referred to as the premises on which the said Lambert 2nd and the defendant were living, and the flats, are the premises, or at least a portion thereof, in controversy in this action.

It was also shown by the plaintiff, (although not material in making out his cause of action in the first instance), that the widow of Adam Sternbergh, the testator, after his death intermarried with one John Dominick, and that the brothers of the testator, by deed dated July 20, 1768, quit-claimed to him with other lots and parts of lots, lot No. 10, and also one-third part of lots Nos. 11, 12, and 13, in the Sternbergh patent, containing three hundred acres ("the said above mentioned third part containing one hundred acres") and that the said Lambert Sternbergh by deed bearing date December 3, 1790, after reciting that he and the said Dominick and wife held those last mentioned lots as tenants in common, and had agreed to make a division thereof, and that lot No. 11, containing one hundred acres, was allotted in severalty to the said Dominick and wife as their part and share, then released and quit-claimed the same ("only excepting a small piece of land on the northerly end of the said lot No. 11, which is lying from the top of a rock of a hill, and adjoining with the other end to a tract of land known as the Morris and Coeyman's patent"), to them in fee.

This was substantially the plaintiffs' case when they rested. It was in my opinion clearly sufficient to warrant a jury in finding that Adam Sternbergh, the testator, was in possession of the premises in question at the time of his death, and that Lambert 2nd held possession under his will. Such must have been the opinion of the justice who held the circuit, for it is shown by the case that when the plaintiffs rested, the defendants' counsel "moved the court to nonsuit the plaintiff, on the ground that no title is proved in Adam, the testator, and from whom the plaintiffs claim title," and the motion was denied.

No paper title in the testator had been shown, and his devise to Lambert was not of this specific property in dispute, and the ruling of the court must have been based on the fact that the possession as proven was presumptive evidence of title in him.

It then becomes necessary to examine the evidence subsequently introduced by the defendants to see whether that justified a direction to the jury to find a verdict for them.

They introduced among other testimony the following documentary evidence:

1. Two ancient deeds from Philip Schuyler, and others to Lambert Starnenberg, dated July 22, 1754, for one-half of three lots in the Morris and Coeyman's patent, being No. 102, containing twenty acres, No. 104, containing forty-one acres, and No. 110, containing fifty-four acres and two rods, and the other from Cornelia Schuyler and others, to the same grantee, dated June 22, 1755, for the other half of said three lots.

2. A will of Lambert Sternbergh (who I shall assume to be the grantee in the two deeds last mentioned, and who is generally called in the case as Lambertus and Lambert 1st), bearing date January 7, 1765, in and by which among other devises he made a devise in these terms: " Also, I give unto my grandson, Lambert Sternbergh, three hundred acres of land which his mother now has in possession, or two lots."

3. A deed, bearing date May 17, 1785, from Adam Sternbergh, described therein as grandson and heir at law of Lambert Sternbergh, deceased (he having died on January 25 or 26, 1765), to Lambert Sternbergh, a grandson of the said Lambert, deceased, in which he, after reciting the terms of the devise in the will of his grandfather to the said Lambert above set forth,

that the said devise was intended to vest an estate in fee simple, but by operation of law only passed a life estate, 'and that the inheritance would on his death vest in the said Adam as heir at law, then grants and conveys " the reversion and inheritance of the lands devised or intended to be devised to the said Lambert, and every part and parcel thereof" to him in fee, but without any specific description thereof.

4. A deed bearing date December 3, 1790, from John Dominick and Sophia, his wife, to Lambert Sternbergh. This deed bears even date with the deed from him to them mentioned in noticing the plaintiffs' proofs, and contains a recital of the ownership by the parties of the said three lots, Nos. 11, 12 and 13 in the Sternbergh patent, an agreement to make partition and division thereof and an allotment of said two lots Nos. 12 and 13, and a small piece of the southerly end of lot No. 11, and also a small piece of lot No. 10, in the said patent, containing in all two hundred and ten acres, as the part and share of the said Lambert, and then releases and confirms the same in severalty to him, and they are stated in the case to embrace all the lands described in the complaint as being in the Sternbergh patent, and it is shown that the other lot in question is No. 110 in the Morris & Coeyman's patent.

The defendants also proved by several witnesses that Lambert 2nd had made statements or admissions to the effect that he did not hold his property from his father "but from his grandfather ; that his father died before his grandfather, and he never owned any land," and it was also shown by Adam Sternbergh, one of the defendants, who was seventy-eight years of age at the time of the trial in April, 1866, that the property so held by him contained originally about two hundred and nine acres in the Sternbergh patent, and sixty acres in the Morris & Coeyman's patent, and about forty acres in another lot in that patent about a quarter of a mile distant from the other, that it was all worked as one farm, and had been since his earliest recollection, and that an old house which was torn down in 1803, stood on the sixty acre lot known as No. 110, that there were two lots of woodland in the Sternbergh patent of one hundred acres each, adjoining said lot No. 110,

and that they were " used for no other purpose than to get wood from."

Evidence was then given on the part of the plaintiffs, and Almerin Gallup testified, that the defendant Adam Sternbergh said in 1846 or 1847, that the deed of May 17, 1785, to his father Lambert 2nd from Adam Sternbergh, the grandson and heir at law of Lambert 1st, sometimes called crazy Adam, " only covered the woodland; the lands in the Sternbergh patent, commonly called the woodland," and " he made this further remark that if the Enderses got the old will in question, he would lose his farm on the flats," referring to the will under which the plaintiffs claim title.

Eliza Brownell, one of the witnesses examined by the plaintiffs before they rested, also testified that the crazy Adam deeds " had reference to the woodland only."

There were some declarations of Lambert 2nd also given in evidence to the effect that his father Adam had deeds of the farm on the flats, but that he had committed them to the flames and they would never see daylight again.

It may be proper to add that the lots in the Sternbergh patent appear to contain one hundred acres each.

Upon the close of this evidence the defendants' counsel asked the court to decide that the action could not be maintained; that as the case then stood the title was in Lambert; that there was no proof that Adam ever had title; and to direct a verdict for the defendants; and the court so decided and directed such verdict, which was then and there rendered.

The plaintiffs' counsel then asked the court to submit the case generally to the jury on the evidence, and upon that being refused, to submit to them separately whether the devise in the will of Lambert or the deed of Adam to Lambert covered the premises sought to be recovered or any portion thereof. All of which requests were refused, and proper exceptions taken.

The decision of the judge on directing a verdict, and the refusal to submit these questions to the jury, were based on the assumption that the title to all of the lands in questions passed as claimed by the defendants under the said last mentioned will and deed, and consequently all the declarations and statements of Lambert 2nd in reference to his possession and that

of his father had become immaterial and unavailing as against that title.

The proof in my opinion did not justify that assumption in reference to the lot in the Morris & Coeyman's patent, for the following reasons. The only evidence tending to show a title to those in Lambert are the Schuyler deeds, but they are insufficient for the following among other reasons. 1. It does not appear that they were ever delivered to him. They bear date, the first of them July 22, 1754, and the last June 22, 1755, and the grantee named therein is Lambert Starnenbergh. It is not shown that Lambert, the testator, was ever called by that name or that the Sternbergh family were ever so called or designated. Conceding, however, that the names are the same, I think we are warranted in assuming that it was a common family name; there appear to have been sons of that name in at least three generations, and as the will of Lambert, the said testator, bears date January 7, 1765, and he died in the same month, it appears that more than ten years intervened between the date of the first of those deeds and that of the will. The mere fact of the name of the grantee and that of the testator being the same, is of itself, therefore, of little importance. It does not show that he was the party designated.

If the deeds had been found among his papers after his death, a delivery thereof might have been presumed to have been made to him, but nothing of that kind is shown ; on the contrary, the only evidence bearing on that question is adverse to such presumption, and tends to show that they were not in existence at his death.

2. It is not shown that the grantors ever owned or had any interest in those lots or had possession of them.

3. It does not appear that Lambert, the testator, ever was in possession of those lots or exercised or asserted any acts of ownership over them.

The devise to his grandson Lambert 2nd cannot be construed into an assertion of a right or a claim thereto. It is in general terms of " three hundred acres of land which his mother now has in possession or two lots," and not those specific lots or by any description that necessarily includes them. The only means of locating the property is by ascertaining what land

then belonging to the testator was in the possession of the grandson's mother. The evidence tends to show, and indeed, all the parties substantially concede, that she was at that time in the occupancy of two lots in the Morris and Coeyman's patent, No. 110, on which the dwelling-house stood, and another lot of forty acres about a quarter of a mile distant therefrom together with three wood lots in the Sternbergh patent, adjoining lot No. 110, of one hundred acres, and that the whole thereof was used and occupied by her as one farm. It is also fairly inferrible from the testimony that she, under the devise from her husband, held an undivided one-third part of the lots in the Sternbergh patent, and that Lambert 1st held the remaining two-thirds thereof.

We are, therefore, in giving construction to the devise under consideration, to look at the relation of the parties to each other, and the situation of the property then in possession of the mother, and we must assume that the testator intended to devise such land only, then in the possession of his grandson's mother, as he owned, or whatever interest he had therein ; and the terms of the devise indicate that such was his intention. He does not describe the property as a farm or as all the lands in her possession, as he would have been likely to do if he meant to make a disposition of the whole of the land or the entire estate.

The language used by him is consistent with the theory that he intended to devise his share only of the three lots, Nos. 11, 12 and 13, in the Sternbergh patent. They were in possession of his grandson's mother and contained three hundred acres, and when he gives to his grandson "three hundred acres of land which his mother has now in her possession, *or two lots,*" it appears to me that the terms of the devise may be fairly and reasonably construed to mean his interest in the three hundred acres which was equivalent to two lots. He evidently intended by the alternative clause, " or two lots," to make some qualification or explanation of the previous terms, and when we take into consideration the nature and extent of his interest in those three lots, his devise properly applies to that and to that only. It would be doing him injustice to say that he intended by it to give what did not belong to him, and as its terms admit of a

construction limiting and restricting it in its operation and effect to the lots in the Sternbergh patent, we cannot properly extend them to property not owned by him.

There are some other facts showing the propriety of such a limitation and restriction. The two lots in the Morris and Coyeman's patent are spoken of by the witnesses as together containing one hundred acres.

The testator cannot be presumed to have referred to them when he speaks of the quantity of the land given as three hundred acres, nor would he have restricted or qualified those terms by saying, " or two lots," if he meant to devise the three lots in the Sternbergh patent or his interest therein as well as those in the other patent.

It is also proper to say in this connection that the declarations. of Lambert 2nd after he took possession on becoming of age, that he held under his father (assuming them to have been made), tend to confirm the views above presented.

My conclusion, therefore, is that there is nothing in the terms of the will, or appearing in the evidence, that warranted the assumption that any property in controversy except that in the Sternbergh patent ever belonged to Lambert, and it follows that the verdict, if based on that ground alone, was improper.

It was, however, urged as an additional ground, that there was no proof that Adam ever had title. I have shown that when the plaintiffs rested the case there was sufficient to call for the verdict of the jury on the question of Adam's possession.

The testimony subsequently introduced, while it tended to show that Lambert 2nd sometimes claimed under his grandfather's will, also tended to establish title in Adam by declarations to the effect that he had deeds of the property which had been destroyed.

The court, in this conflict of evidence, could not properly decide that the plaintiffs had shown no title.

In conclusion I will remark that the question decided on the former appeal in this case, were not the same as those on the present. The opinion of both the judges then given show that the decision was based on the ground that the will of Lambert

Erickson *v.* Smith.

1st had been improperly excluded, and that the judge erred in instructing the jury that if he was originally the owner they might presume a conveyance from him to Adam his son.

The result of these considerations is, that the direction of the judge to the jury at the circuit, to find a verdict for the defendant, was wrong, and it becomes unnecessary to examine the various exceptions taken as to the admissibility of evidence.

The judgment of the supreme court should be reversed and a new trial ordered, costs to abide the event.

Judgment reversed and new trial ordered, costs to abide event.